TOWNSHIP OF BERKELEY HEIGHTS, *ETC.*, PLAINTIFF-APPELLANT, v. DIVISION OF TAX APPEALS, DEPARTMENT OF THE TREASURY, STATE OF NEW JERSEY, *ET AL.*, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued June 19, 1961—Decided June 30, 1961.

Before Judges FOLEY, LEWIS and FUSCO.

*Mr. Richard G. O'Brien* argued the cause for the plaintiff-appellant (*Mr. Edward A. Pizzi,* attorney).

*Mr. Theodore I. Botter,* Deputy Attorney General, argued the cause for defendants-respondents, Division of Tax Appeals, Department of the Treasury, State of New Jersey (*Mr. David D. Furman,* Attorney General, attorney).

*Mr. Earl Pollack* argued the cause for the defendant-respondent, Borough of Kenilworth (and also appeared on behalf of Borough of Garwood and Township of Springfield).

The opinion of the court was delivered by

Fusco, J. S. C. (specially assigned). This is an appeal by the Township of Berkeley Heights, Union County, from a determination of the Division of Tax Appeals, Department of the Treasury, State of New Jersey affirming the Union County Equalization Table for 1960. Appellant had challenged the Table before the county board on January 25, 1960, but the board adopted the final Table without change on March 10, 1960. Review of the Table was had before the Division of Tax Appeals pursuant to *N. J. S. A.* 54:2–37 and in the opinion filed by Commissioner Doherty, it was said: "We cannot say that the method of equalization used here was unreasonable or arbitrary."

The Boroughs of Kenilworth and Garwood and also the Township of Springfield appeared in this case as defendants-respondents since its outcome would materially affect their tax burden along with the tax burdens of the other municipalities in Union County.

The questions presented in this appeal are whether the Union County Tax Board erred in accepting a ratio for Class IV property predicated on a single sale at $10,000 for a parcel of land assessed at $1,250; whether in its discretion it should have considered a consent judgment entered by the Division of Tax Appeals to which was attached an affidavit by the Assessor of the Township of Berkeley Heights alleging that property of Bell Laboratories was assessed using a ratio of 20; and finally whether the board should have stratified the several types of properties within Class IV so as to arrive at a ratio of 18.21.

The Union County Board of Taxation after hearing argument by appellant fixed the overall equalization ratio of assessed to true value for the township for the year 1960 at 14.82 and, in so doing, adopted the ratio previously established by the State Director of Taxation for distribution of school aid. The State Director in order to arrive at this overall ratio of 14.82 compared the recent sales of real property in each of the four classes of property within the

township, to the assessed value of the properties sold, and in so doing a ratio was established in each of the four classes of property. By weighting these four ratios (*i. e.,* 11.52, 18.23, 18.23, and 12.50) in proportion to the percentage of property in each class in the township the overall average ratio of 14.82 was reached. The ratio which was established with respect to the Class IV (commercial, office, industrial and research and multiple family) property (82% of which consists of the Bell Telephone Laboratories' property) was based upon a single sale, during the two-year base period, of a tract of land 50′ x 148′ upon which there existed a building encompassing 485 sq. ft. This tract was assessed at $1,250 and sold for $10,000. Thus by dividing $10,000 into $1,250, a ratio of 12.50 was established. There is no question presented as to the *bona fide* nature of this sale and, in fact, the assessor testified that it was fair. Nor is there any dispute as to any of the other facts involved in this case.

It is the appellant's contention, however, that since 82% of the Class IV property consists of the Bell Telephone Laboratories' property, the use of this single sale is not a fair sampling of the property, encompassed within Class IV and is therefore so inaccurate as to be arbitrary and consequently unconstitutional.

Equalization of assessments has for its general purposes:

"the adjustment of aggregate valuations of property, as between the different counties of the state or between the different taxing districts of the same county, so that the share of the whole tax imposed on each county or district shall be justly proportioned to the value of taxable property within its limits, in order that one county or district shall not pay a higher tax in proportion to the value of its taxable property, than another." 84 *C. J. S. Taxation* § 489, *p.* 926. See also *City of Passaic v. Passaic County Board of Taxation,* 18 *N. J.* 371 to 377 (1955).

In pursuing this function of equalization of assessments it is recognized that absolute equality is an impossi-

bility and that even if some inequality should result this fact alone is not sufficient to make the action taken by the county board arbitrary or unreasonable. *Borough of Totowa v. Passaic County Board of Taxation*, 5 *N. J.* 454, 464 (1950). Moreover, the principle by which we are to be guided in such cases is the constitutional mandate that property shall be uniformly assessed, *N. J. Const. Art.* 8, § 1, *Para.* 1. The general rule, therefore, in light of this mandate, in such cases is that where it is not possible to attain uniformity and equality together with the absolute true value, equality and uniformity are to be preferred at the expense of true value, *Delaware L. & W. R. Co. v. Neeld*, 23 *N. J.* 561 (1957).

██ Keeping in mind these principles, it is apparent that through the use of the sale technique in arriving at a class ratio, uniformity can be accomplished with a minimum of discrimination. This practice has been followed for several years and has proven to be satisfactory. The courts have upheld the methods used by the Director.

"* * * The Director's ratios, determined as they must be from data of the quality specified in *N. J. S. A.* 54:1–35.3, are of necessity a more reliable indication of actual average assessment ratios than the estimates of the members of the county boards, however informed their judgment based upon generalized information or knowledge. In addition, we must surely impute to the Legislature an intent so far as possible to avoid the incongruous result of fixing a municipality's share of school aid moneys upon one computation of the aggregated true value of real estate and its share of the county tax burden upon another * * *." *City of Passaic v. Passaic County Board of Taxation, supra*, 18 *N. J.* at *p.* 385.

The appellant seeks to support a ratio of 20.00 with regard to the Bell Laboratories by relying upon the testimony of the county assessor to the effect that the assessments for the years in question were based upon 20% of true value. Moreover, the appellant in order to establish this 20.00 ratio relies heavily upon a consent judgment between the Bell Laboratories and the township whereby the assessed value of the Bell Laboratories was established at 20% of the

true values. In this respect the appellant points out that if the ratio of 12.50 which was adopted by the board is used the true value of the Bell Laboratories would be $41,259,600, leaving a discrepancy between this figure and the figure established by the consent judgment as true value of over $15,000,000, which the appellant feels is totally inaccurate in view of the extensive appraisal that went into the consent judgment.

On the other hand, this court has recognized the fact that "Until a more effective method is developed, sales must constitute the principal basis for the determination of assessment ratios," *Township of North Bergen, County of Hudson v. Division of Tax Appeals*, 40 *N. J. Super.* 510, 518 (*App. Div.* 1956), affirmed on opinion below 24 *N. J.* 89 (1957).

To illustrate the difficulty, and the possibility not only for disparity but also for inequality attendant upon the theory advanced by the appellant, whereby the sale price is used only as one of the component parts of the aggregate true value, attention should be called to the fact that 20.00 ratio which is said to be applicable to the Bell Laboratories is inaccurate. This 20.00 ratio as has been previously mentioned is based upon (a) the County Tax Assessor's testimony and (b) the consent judgment between the township and Bell Laboratories. The County Tax Assessor's testimony that all property is assessed at 20% of true value is conclusively shown to be erroneous. This is clearly demonstrated by the fact that the assessed value of Classes I and II is substantially less than 20% of the true value as established by the sales of those classes of property, and with which there is no quarrel. Moreover, if the assessed value of $5,588,350 of the Bell Laboratories is 20% of true value as set forth in the consent judgment, the true value of the Bell Laboratories is not $25,787,250 as set out in the appellant's table, but $27,941,750. Using the appellant's figures, the assessed value would be 21.6% of the true value.

Even if we should overlook these errors and inconsistencies which are apparent with regard to the County

Assessor's testimony, and turn to the consent judgment alone for support of the view that the assessed value of the Bell Laboratories is 20% of the true value, we find that there is just as much if not more opportunity for disparity and inequality. First of all, the consent judgment relates only to assessment and not to ratio, and assuredly such a consent should not be given evidential credence. It is clear that such a voluntary assessment agreement does not establish a "sales price" or "sales value." In addition to these facts, it must be understood that before the entry of the consent judgment the other municipalities which might be affected by a determination of a ratio based upon that judgment were not given an opportunity to be heard. It is also to be noted that any number of reasons (such as a desire to attract new industry) may have driven the township into agreeing to the entry of such a judgment. At any rate, it is clear that the consent judgment should be binding only as between the township and Bell, and that it is not the type of proceeding which should be utilized to arrive at a ratio of assessed to true value which would ultimately affect the burden of taxation to be borne by the other municipalities in Union County.

There is no evidence to substantiate the view that the county board violated its duty, as set out in *N. J. S. A.* 54:3–17, to prepare a table in accordance with its best "knowledge and information," by accepting the Director of Taxation's table. While it is true that the county board is not bound by the Director's table, *City of Passaic v. Passaic County Board of Taxation,* 27 *N. J.* 467 (1958), the county board should take official notice of the tables established by the Director of the Division of Taxation and should give due weight to the determination of the Director in this respect. *City of Passaic v. Passaic County Board of Taxation,* 18 *N. J.* 371 (1955).

The appellant concedes that the normal method of determining true value is by adopting the *bona fide* sale price. However, it contends that the Class IV property

should be stratified into the following component parts: (a) commercial with 12.50 ratio, (b) Bell Laboratories with a 20.00 ratio and "other" with a 18.23 ratio (this predicated on the fact that there were no sales in this group and therefore the ratio as to vacant land applied), in order to accommodate the Bell Laboratories property which makes up 82% of the Class IV. The appellant contends that the one sale of Class IV property should be considered as only one component part of this class. We are cited no authority which supports such a theory of stratification. In fact, *Township of North Bergen v. Division of Tax Appeals, supra,* cited by the appellant as most closely analogous to its position in fact holds:

"It will suffice here to hold that a method of equalizing aggregation is valid, even though it is based exclusively on the sales price—unless its application in a particular situation is prejudicial to a municipality * * *"

In this case there has been no indication of prejudice. Moreover, it is the opinion of this court that if stratification were to be permitted it would tend to create a new series of classes for weighting purposes and thereby undermine the basic principles of uniformity and equality predicated on the four classes now used. Hence, stratification in individual cases might create greater disparity among the taxing districts.

If the method of stratification and its attendant ratios were to be adopted, the average weighted ratio for Berkeley Heights would be 18.21 as compared to 14.82, resulting in a difference of $19,374,049 in the 1960 computation of the aggregate true value.

Unless there is some affirmative proof tending to establish the fact that the county board's action with regard to this matter was arbitrary and unreasonable, it cannot be said that the county board failed in the statutory duty imposed upon it by adopting the table promulgated by the Division of Taxation. *Borough of Carteret v. Division, etc.,*

*Dept. of Taxation & Finance,* 40 *N. J. Super.* 439 (*App. Div.* 1956), certification denied *Borough of Sayreville v. Division of Tax Appeals,* 22 *N. J.* 224 (1956).

We are in accord with the determination of the Division of Tax Appeals that the application of the sale price to assessment uniformly establishes a fair ratio, and avoids a race among the several districts to conceive of intricate and ingenious plans to obtain individual advantages.

We fail to see any administrative (*quasi*-legislative) deficiency of such substance as would justify judicial interference.

For the reasons outlined above and keeping in mind the basic objectives of uniformity and equality with regard to the equalization of assessments, the judgment below is affirmed.