110 N.J. Super. 93 (1970)
264 A.2d 461
CITY OF NEWARK, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF,
v.
ESSEX COUNTY BOARD OF TAXATION, A BODY POLITIC OF NEW JERSEY, ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided April 10, 1970.
Addendum April 15, 1970.
*96 Mr. Anthony J. Iuliani for plaintiff City of Newark.
Mr. Richard M. Conley, Deputy Attorney General, for defendant Essex County Board of Taxation (Mr. George F. Kugler, Jr., Attorney General of New Jersey, attorney).
Mr. Saul A. Wolfe for defendants Town of Belleville et al (Messrs. Skoloff & Wolfe, attorneys).
ACKERMAN, J.S.C.
This matter is before the court on complaint in lieu of prerogative writs filed by the City of Newark on March 5, 1970 against the Essex County Board of Taxation and all other 21 municipalities of the County of Essex. It deals with the claim of the City of Newark for allowance of credits in 1970 pursuant to N.J.S.A. 54:4-49 for county taxes paid during the years 1960 to 1969, inclusive, with respect to properties owned by the city and leased to the Port of New York Authority at Port Newark Terminal. After a hearing on March 26, 1970 this court filed a written opinion, holding that the matter was appropriate for summary proceeding pursuant to R. 4:67-2(b), but further ruling that there was nothing before it which was ripe for review since the county Board of taxation, the administrative body with the right and duty to first determine whether the city was entitled to such credits, had not rendered its final decision in the matter and had until April 10, 1970, under N.J.S.A. 54:4-52, to render such decision. Rather than dismissing the ctiy's complaint *97 as premature, the court, in view of the obvious matters of public interest involved, continued the hearing until April 7, 1970 with the advice to the parties that if the county board had not yet rendered its final decision by that date, it would dismiss the complaint, and if the Board had rendered a decision, it would then determine whether it would grant relief on the complaint or require an exhaustion of administrative remedies by the normal course of appeal to the Division of Tax Appeals, as provided in N.J.S.A. 54:2-35.
On April 4, 1970 the court was advised that the board had rendered a final decision to the effect that the city is not entitled to any credits for county taxes paid for the years 1960 to 1966, but that it is entitled in 1970 to credits for such taxes paid for the years 1967, 1968 and 1969.

I
A short history of the prior litigation bearing upon the city's claim is appropriate. During the period from 1960 to 1965 there was litigation relating to the exempt status of said properties for those years and also with respect to the rights of the city and of the Port of New York Authority under the leases relating to said properties and with respect to compliance by the Port Authority with its obligations thereunder. The parties to the tax phase of this litigation were the City of Newark, the Port of New York Authority, the Essex County Board of Taxation and the City of East Orange, representing itself and the other municipilaties of Essex County. The matters eventually reached the Supreme Court on appeal. Because of procedural snarls, the Supreme Court in Port of New York Authority v. Essex County Board of Taxation, 46 N.J. 51 (1965), remanded all matters to the Law Division with directions to hear de novo the entire controversy as to all years involved. In so doing the Supreme Court noted, "we are always reluctant to by-pass the administrative process *98 in the area of taxation, but under these unusual circumstances, the public interest will be advanced by this disposition." (46 N.J., at 53).
Upon such remand a pretrial conference was duly held in the Law Division in accordance with the Supreme Court's mandate, and on January 28, 1966 a pretrial order was entered in the consolidated cause. Among the issues specifically listed for resolution was whether the properties leased by the city to the Port Authority were subject to land taxation beginning with the year 1960. The City of Newark contended that the properties were subject to taxation and that, under the terms of the leases, said taxes were payable by the Port Authority. The contentions attached to the pretrial order of the City of East Orange, as an "intervening defendant which has intervened on behalf of itself and on behalf of other municipalities of Essex County," clearly indicate that said municipalities were concerned that credits would be granted to the City of Newark for county taxes paid in the event that the properties were held to be exempt. Said contentions stated as follows:
The City of East Orange is an intervening Defendant which has intervened on behalf of itself and on behalf of other municipalities in Essex County, since the determination of the taxability of the properties involved or their exemption will affect the share of County tax burden that the Essex County municipalities will have to bear. This party asserts that the properties which are subject of this proceeding are not exempt from taxation and that a tax thereon should be paid by either the City of Newark or The Port of New York Authority. Insofar as the City of Newark asserts the claim that these properties are not exempt, we will rely upon the factual contentions of the City of Newark.
In October, 1966, while said litigation was still pending, a ninth supplemental lease agreement was entered into between the City of Newark and the Port Authority. By said agreement the parties expressly agreed that all pending litigation between them, including that related to the exempt status of the properties for the years 1960 to 1966, should be dismissed and that thereafter the properties *99 should be listed by the City of Newark as exempt. On December 12, 1966 a formal order, consented to in writing by the City of Newark, the Port Authority, the county board of taxation and the City of East Orange, was entered in the consolidated cause dismissing the same. The order is explicit in its terms and provided as follows:
This matter having been opened to the Court by THE CITY OF NEWARK (Norman N. Schiff, Esq. appearing) in the presence of THE PORT OF NEW YORK AUTHORITY (Francis A. Mulhern, Esq. appearing) and of THE CITY OF EAST ORANGE (William L. Brach, Esq. appearing) and it being represented to the Court by counsel for THE CITY OF NEWARK AND THE PORT OF NEW YORK AUTHORITY that an amicable adjustment of all the matters in dispute between them has been reached and that by reason thereof THE CITY OF NEWARK has consented to a dismissal with prejudice of its claims herein, and it further appearing that, since all County taxes resulting from the real estate assessments, heretofore made by THE CITY OF NEWARK, have been paid by THE CITY OF NEWARK and since THE CITY OF NEWARK has and hereby does stipulate that it will make no attempt to recover such payments, intervenor, THE CITY OF EAST ORANGE, has consented to this dismissal, with prejudice and it further appearing that THE ESSEX COUNTY BOARD OF TAXATION, has, by reason of the settlement by the other parties to the proceeding, concluded that a judicial determination of the questions of the taxability of the respective interests in the properties in question is unnecessary, and that it has no further interest herein and, therefore, has consented to a dismissal of these proceedings, with prejudice, but does not thereby waive any right or power to raise or assert such issues with respect to any future proceedings as may be required by law; and good cause otherwise appearing,
It is on this 12th day of December 1966, ORDERED that these actions be and they hereby are dismissed with prejudice but without costs to any party.
This ended all litigation as to the 1960 to 1966 taxes, and all appeals and challenges to the taxable status of the properties were voluntarily abandoned and terminated. As a consequence, the listing of the properties for those years as taxable rather than exempt remained unchanged and the question of exemption was never decided on the merits.
In January 1967, pursuant to the agreement between the City of Newark and the Port Authority in the ninth supplemental *100 lease, the Newark assessor listed all the properties leased to the Port Authority at Port Newark Terminal as exempt for 1967. On January 25, 1967 the Essex County Board of Taxation ruled that the properties were not exempt and directed the assessor to restore them to the list as taxable. The City of Newark and the Port Authority then joined in a complaint in lieu of prerogative writs in the Law Division against the county tax board seeking a declaration that the properties were exempt.[1] The other 21 municipalities in the county were permitted to intervene and they participated directly in the litigation. In an opinion delivered on June 26, 1968 in Newark v. Essex County Board of Taxation, 103 N.J. Super. 41, the Law Division held that said properties were partly exempt and partly taxable and a judgment was entered to that effect, modifying the holding of the county board of taxation. The Port Authority appealed and the county board of taxation filed a cross-appeal. In Newark v. Essex County Board of Taxation, 54 N.J. 171, the Supreme Court held that all of said properties were exempt. Its opinion, modifying the judgment entered by the Law Division, was rendered on June 25, 1969. A petition for certiorari to the United States Supreme Court, seeking review of the decision of the New Jersey Supreme Court, was denied on December 15, 1969. Newark v. Port of New York Authority, 396 U.S. 987, 90 S.Ct. 483, 24 L.Ed.2d 452 (1969).
It is clear that this litigation specifically related only to the exempt status of the properties so far as 1967 taxes were concerned, but it was being prosecuted during the years 1967 through 1969. Although the City of Newark originally joined the Port Authority in filing the 1967 complaint *101 in the Law Division for a declaratory judgment as to the exempt status of the properties and took a "neutral" position at the time of the pretrial conference in that cause in December 1967, it is apparent that as the litigation progressed it took the position, similar to that of the county board and the municipalities, that the properties were not entirely exempt. Nevertheless, during the years 1968 and 1969 while the litigation was in progress, the properties were listed each year, in accordance with the supplemental lease, as exempt by the Newark assessor, but the county board, in accordance with its decision with respect to the 1967 taxes that was being appealed, directed each year that the properties be listed as taxable. The city complied with these directions and paid the county taxes thereon for each of said years.
In January 1970, following the final decision of the New Jersey Supreme Court, the Newark assessor listed the properties as exempt for 1970, and at the same time the city made application for credits for county taxes paid on said properties for the entire period from 1960 through 1969. Although the county tax board rendered a tentative decision in February 1970 that the credits for the years 1960 to 1966 would be denied, it indicated that it was disposed to grant the credits for the 1967, 1968 and 1969 taxes in the apportionment valuations contained in the 1970 table of aggregates. It advised Newark by letter dated February 2, 1970 that such was the "tentative holding" even though no formal appeals had been taken by the city or the Port Authority with respect to the 1968 and 1969 taxes. On February 13, 1970 the city requested the county board to enter a "judgment" in accordance with the decision expressed in the letter of February 2, 1970. In a letter dated February 24, 1970 the board advised the city that the judgment form submitted by the city was "not applicable to the present case" and that there was no matter pending before it upon which a judgment could be issued.
*102 The city thereupon filed its complaint in this cause. It prayed that its application for credits and the county board's responses by letter be deemed the equivalent of a formal judgment for purposes of review or, in the alternative, that the court fix a short day for the rendering of such formal judgment by the board. It also requested the declaratory judgment that the city was entitled to the claimed credits for county taxes for the years 1960 through 1969. The parties cooperated in arrangements for a speedy hearing before the court on March 26, 1970 and, as indicated above, the court ruled at that time that the board was not required to pass upon the claims for credits until it issued the table of aggregates with apportionment valuations on April 10, 1970 in accordance with N.J.S.A. 54:4-52, and that in the absence of a final decision by the board as to the granting or denial of credits, there was nothing before it that was appropriate for review. However, in view of the matters of public interest involved, the hearing was adjourned until April 7, 1970, four days before the date the county tax board was required to issue the table of aggregates.
On April 4, 1970 the court was advised that the board had rendered a final decision denying the credits for the years 1960 to 1966 and granting the credits for the years 1967, 1968 and 1969. A copy of the board's resolution to that effect, dated March 31, 1970, which directed that the secretary of the board reflect the allowed credits in the table of aggregates for the year 1970, and copy of Commissioner Glavin's written opinion on behalf of the board, were delivered to the court and to the parties. The 21 municipalities opposing the granting of credits thereupon filed a motion for summary judgment returnable on April 7, 1970, the continued date for the hearing before the court, seeking, among other things, the entry of an order reversing and setting aside the decision of the county tax board granting credits for the years 1967 to 1969 or, in the alternative, reversing and setting aside the decision of the board granting credits for 1968 and 1969.
*103 At the hearing held on April 7, 1970 none of the parties offered any evidence. As is apparent for the above recitation, the court, with the consent of the parties, has taken judicial notice of the records of the prior litigation in this court and in the Supreme Court, pursuant to Evidence Rule 9. None of the parties offered any evidence before the county board or before this court that there has in fact been any use of the involved properties by the Port Authority since 1967 which would render the properties not entitled to the tax exemption which the Supreme Court held that the properties enjoyed for 1967. This court has not been advised whether a statement of exemption with respect to the 1970 exempt status of the properties was taken from the Port Authority or the City of Newark pursuant to N.J.S.A. 54:4-4.4 by the city tax assessor, but it is clear that the properties have been listed by the assessor as exempt for 1970 and that the county board has approved such exempt listing.
It is apparent that no formal appeals were taken, during the period when the litigation with respect to the exempt status for 1967 taxes was in progress, with respect to the action of the county board in requiring the properties to be listed as taxable for 1968 and 1969. Commissioner Glavin stated to the court at the hearing that he knew of no such appeals for 1968 and 1969, and that he knew of no formal understanding by the parties which, in so many words, constituted a formal agreement of the parties that the ultimate resolution of the litigation with respect to the 1967 taxes should govern the tax status of the properties for 1968 and 1969. However, in January 1970, a judgment was entered by the Division of Tax Appeals in the matter of Port of New York Authority v. Essex County Board of Taxation, Docket L-2002-67, which was the appeal to the Division with respect to the 1967 taxes referred to above and which provided:
*104 This matter being opened to the Division by Petitioner, THE PORT OF NEW YORK AUTHORITY (Francis A. Mulhern appearing) and Respondent, THE ESSEX COUNTY BOARD OF TAXATION (Charles H. Landesman, Deputy Attorney General appearing), and it being recalled to the Division that, in its Order of December 5, 1967 Staying Further Proceedings, it is recited that the issues in this appeal were among the issues to be adjudicated in the Civil Action then pending in the Superior Court, Law Division, Essex County, under Docket No. L-33980-66 P.W., entitled City of Newark, et al. vs. Essex County Board of Taxation in which Petitioner and Respondent here were parties, and it appearing that the decision of the Superior Court in that proceeding was certified by the Supreme Court, and that that Court determined in its decision of June 25, 1969 (54 N.J. 171) that each of the properties which are the subject of the Petition herein were and are wholly exempt from taxation, and the Supreme Court of the United States having denied the Petition of the City of Newark for a Writ of Certiorari to the Supreme Court of New Jersey to review the said decision of that Court ([396 U.S. 987, 90 S.Ct. 483, 24 L.Ed.2d 452] 38 U.S.L.W. 3222, Dec. 15, 1969).
 It is on this day of January, 1970
ORDERED, that the Petition herein be and it hereby is granted; that the Judgments of Respondent, Essex County Board of Taxation to which the Petition is directed are reversed and that each of the properties listed on Exhibit 1 attached to the Petition herein are determined to be wholly exempt from taxation.
At the hearing before the court on April 7, 1970 each of the parties abandoned any claim that the administration remedy of appeal to the Division of Tax Appeals pursuant to N.J.S.A. 54:2-35 should be required and joined in the request that the court act upon the prayers in the city's complaint and upon the municipalities' motion for summary judgment.[2] It was conceded by the said municipalities *105 in open court that for the purposes of their motion there was no change factually in the use of the properties by the Port Authority during the years 1967, 1968 or 1969 that would disentitle said properties to the exempt status found to exist by the Supreme Court with respect to 1967 taxes.

II
The first question for decision is whether the parties should be relegated to the normal course of appeal to the Division of Tax Appeals from the decision of the county tax board with respect to the granting of credits. A deviation from the normal course of appeals should not be lightly countenanced. Central R.R. Co. of N.J. v. Neeld, 26 N.J. 172 (1958), cert. den. 357 U.S. 928, 78 S.Ct. 1373, 2 L.Ed.2d 1371 (1958); Roadway Express, Inc. v. Kingsley, 37 N.J. 136 (1962).
R. 4:69-5 of the 1969 revision of the court rules, which has its source in R.R. 4:88-14 and relates to exhaustion of administrative remedies, provides:
Except where it is manifest that the interest of justice requires otherwise, actions under R. 4:69 shall not be maintainable as long as there is available a right of review before an administrative agency which has not been exhausted.
This case involves matters of public interest. Port of New York Authority v. Essex County Board of Taxation, and Newark v. Essex County Board of Taxation, supra. It also involves legal questions as distinguished from factual *106 questions. The parties are in accord that the normal doctrine of exhaustion of administrative remedies may appropriately be waived, and the questions presented, as indicated above, do not involve matters which are peculiarly within the administrative domain. In all the circumstances, the interests of justice and expedition dictate that the exhaustion doctrine be found inapplicable and the court so holds. Farmingdale Realty Co. v. Farmingdale, 55 N.J. 103, 112 (1969); Matawan v. Monmouth County Board of Taxation, 51 N.J. 291, 296-297 (1968).

III
With respect to the denial of credits to the City of Newark for county taxes paid for the years 1960 to 1966, the decision of the county board is clearly correct. Considering the issues to be resolved in the consolidated 1966 litigation, including the contentions of the City of East Orange therein, and the specific terms of the ninth supplemental lease entered into in 1966 between Newark and Port Authority, it is clear that Newark is barred from claiming such credits by the express provisions of the consent order dismissing the 1966 litigation.
The argument advanced by Newark, that the provision in the order of dismissal that "it will make no attempt to recover" payments for county taxes simply means that it agreed not to seek an actual cash refund of such tax payments but did not thereby bar itself from seeking "credits" therefor, is clearly specious. All the parties to the consent order obviously knew that under the governing legislative provisions Newark had no right to seek a dollar reimbursement for such taxes and that its only remedy was to seek a credit therefor against future county taxes. N.J.S.A. 54:4-49; N.J.S.A. 54:4B-1 through 4; see N.J.S.A. 54:2-41.5, 54:4-5, 54:4-6, 54:4-8.1, 54:4-34.3, 54:4-50, 54:4-51, 54:4-53, 54:4-61, 54:4-74 and 54:4-76; Ross v. Walton, 63 N.J.L. 435 (Sup. Ct. 1899), aff'd 67 N.J.L. *107 688 (E. & A. 1902); Coe v. Englewood Cliffs, 68 N.J.L. 559 (Sup. Ct. 1902); Trewin v. Shurts, 74 N.J.L. 200 (Sup. Ct. 1907); see Ridgefield Park v. Bergen County Board of Taxation, 31 N.J. 420, 428 (1960); and Farmingdale Realty Co. v. Farmingdale, 55 N.J. 103, 110-111 (1969). Clearly, the City of East Orange and the other parties relied upon the terms of the order. Wholly apart from any other reason for disallowance of such credits, Newark is barred by the doctrines of waiver, estoppel and res judicata from claiming credits for those years.

IV
The decision of the county board granting a credit for 1967 taxes to the City of Newark in the 1970 table of aggregates is also clearly correct. The granting of such credit is in specific compliance with the provisions of N.J.S.A. 54:4-49, and particularly subsection (c) thereof. The statute provides:
(a) Except as to any State tax at a fixed rate provided for in sections 54:4-50 and 54:4-51 of this Title, each county board of taxation, after having received the tax lists and duplicates of the assessors and having revised and corrected the same and having equalized the aggregate valuations of all the real property in the respective taxing districts, as required by sections 54:3-17 to 54:3-19 of the Revised Statutes, shall, after making adjustments for the debits and credits hereinafter mentioned, apportion the amount to be raised in the respective taxing districts for State, State school, county and free county library purposes and for purposes of regional and consolidated school districts and school districts comprising 2 or more taxing districts, on the basis of the total valuation so ascertained for each taxing district. The total valuation for each taxing district, so ascertained, shall be known as the "apportionment valuation."
(b) The amount to be apportioned among the respective taxing districts shall be the amount to be raised for the purposes specified in subsection (a), plus or minus the difference between the total debits and total credits of the taxing districts affected, determined as provided in subsection (c). The net amounts respectively to be raised, after making allowance to the affected districts for the debits and credits, shall be equivalent to the amount required for each of the purposes specified in subsection (a).
*108 (c) The net debit or credit of each taxing district shall be the amount by which the taxing district has overpaid or underpaid its share of the specific tax or taxes for the purposes specified in subsection (a) for the preceding year or years because of increases or decreases in the amount of the assessments of the district subsequent to the apportionment in the preceding year or years by reason of final judgments on appeals, complaints and applications, the correction of clerical errors under section 54:4-53 of the Revised Statutes and the allowance of additional veterans' exemptions or deductions during the prior tax year by the collector pursuant to law. When an assessment has been reduced or added to, or increased, on appeal, complaint or other application, and the judgment on that appeal, complaint or other application has been further appealed, no deduction or increase as herein provided for shall be made with respect to the appealed assessment until the further appeal has been finally determined.
(d) So that there shall be uniformity of application and treatment under this section in all of the counties, the Director, Division of Taxation, shall issue regulations for the guidance of the county boards of taxation in the determination of the apportionment valuations, the amounts to be apportioned and the amounts of the debits and credits.[3]
All the parties hereto are in accord that the credit for the 1967 county taxes is properly allowable to Newark in the 1970 apportionments as determined by the board, if it is allowable at all. The final determination with respect to the exempt status as to 1967 was rendered on appeal by the Supreme Court in 1969 and such credit could not, under the express terms of subsection (c) of the above statute, have been granted prior to 1970.
However, the 21 municipalities claim that no credit may be granted even for the 1967 county taxes which were the subject of the final judgment decided by the Supreme Court. The contention is advanced that N.J.S.A. 54:4-49(c) contains no express language providing credits for property ultimately held by final judgment to be exempt, except for "additional veterans' exemptions" specifically referred to in the statute. It is claimed that the language of the statute which permits a credit for the amount by which a taxing *109 district has overpaid or underpaid its share of county taxes because of "increases or decreases in the amount of assessments of the district subsequent to the apportionment of the preceding year or years by reason of final judgments on appeals, complaints and applications," refers only to increases or decreases in valuations of taxable properties and not to increases or decreases because of exemptions or loss of exempt status.
This harsh interpretation of the statute flies in the face of its express language and finds no support in the general scheme of our taxing statutes. In the first place, the language referred to is broad enough to cover credits for property originally taxed but subsequently held to be exempt. Particularly in the light of the language of the predecessors to this statute, it is quite apparent that the Legislature was referring to overpayments or underpayments of county taxes by taxing districts as entities based upon a change in the assessments of the district as a whole following an apportionment. The language of the source statute, L. 1918, c. 236, supports this view. It provided that, after revising, correcting and equalizing the "assessed value of all the property in the respective tax districts * * * county boards shall * * * deduct from the total valuations of each taxing district as so revised * * * an amount equal to the ratables of the preceding year or years of such district represented by the reduction or all reductions made in the assessments of such districts subsequent to the apportionment of the preceding year or years" by appeals, etc.
The language of the present statute, as well as of its source statute, is clearly broad enough to permit credits for property subsequently held to be exempt. A change in the assessment of a property from a dollar figure, as taxable, to zero because it is exempt, is clearly a "decrease" or "reduction" of the assessment of such property. As stated by the Supreme Court in Newark v. Fischer, 3 N.J. 488 (1950):
*110 The County Board had jurisdiction of the subject matter and pursuant to R.S. 54:3-22, as amended N.J.S.A. was vested with the power to "revise and correct the assessment in accordance with the true value of the taxable property." This power necessarily includes the right to cancel the assessment entirely where the property is determined to be not taxable.[4] [at 492]
Moreover, by L. 1942, c. 79, the source statute was amended to provide for the first time for debits where property is added to the taxable valuations of a taxing district after an apportionment. The language of such addition required county boards to "add to such total valuations an amount equal to any increase made in the assessment of such districts during the same period in consequence of like action by either such board or any court." This statute, like the present statute, clearly speaks of increases in the overall assessments of taxing districts as the result of appeals, etc., in a year or years subsequent to an apportionment. Clearly, if property is reflected in an apportionment for a prior year as exempt and the matter is appealed, and by final judgment in a later year it is held that the property was in fact taxable, a debit or addition would be required, not only by the express language of the statute but also in order to work a fair equalization and distribution of the tax burden among taxing districts and the taxpayers thereof, which is the ultimate goal of equalization and apportionment. If a change in the assessment of a particular piece of property from no taxable value to a dollar figure must be reflected as a debit or an addition, a change in the assessment of property from a dollar figure to no taxable *111 value warrants the granting of a credit or a reduction in the apportionments.
This interpretation of N.J.S.A. 54:4-49 is also clearly supported by the terms of Chapter 4B of Title 54, which finds its source in L. 1960, c. 175, and relates to adjustment of county taxes. This chapter clearly provides for a credit in a case such as this. N.J.S.A. 54:4B-2 provides:
Whenever in any proceeding before any administrative tribunal or any court of this State or of the United States it shall be determined that any county tax assessed or allocated to any taxing district is unconstitutional or illegal, in whole or in part, or is excessive or inadequate for other reasons, such local taxing district shall be debited or credited as the case may be, on the county taxes next due, with the difference between the amount which it has paid and the amount ultimately determined as said taxing district's lawful share of county taxes.
N.J.S.A. 54:4B-3 provides:
In no case shall any taxing district entitled to credit on county taxes as provided in section 2 hereof, have the right to sue for or obtain a judgment directing the repayment of such excess taxes by the county treasurer or by any other county official.
N.J.S.A. 54:4B-4 provides:
The remedy provided herein relating to excess county tax payments made by taxing districts shall be sole and exclusive and shall apply to excess taxes whether paid heretofore or hereafter and shall also apply where any such taxing district has heretofore obtained or may hereafter obtain a judgment for the repayment of such excess taxes.
These provisions, without any question, support the credit for 1967 taxes here and clearly show that N.J.S.A. 54:4-49 is properly interpreted to permit and require such credit.
Moreover, this interpretation allowing such credit is clearly the only just and sensible construction to be placed upon the statute. In the argument advanced by the 21 municipalities *112 it was frankly conceded that the interpretation which they advanced would grant a windfall to the county and to taxpayers of other taxing districts at the expense of the paying taxing district and its taxpayers. It is claimed that the Legislature purposely and intentionally withheld the allowance of such credit.
This court cannot attribute any such unjust and illogical purpose to the Legislature and the language and purpose of the statute do not warrant it. No useful purpose would be served in referring in detail to the general taxing scheme reflected in our statutes which has so clearly been summarized and reviewed in the decisions of our highest court. See East Orange v. Palmer, 47 N.J. 307, 317-318 (1966); Farmingdale Realty Co. v. Farmingdale, supra. Although perfect equality cannot be achieved in matters of taxation, the general intent is that there shall be such equality, consistent with the practical requirements for the production of revenue to permit our municipal, county and state governments to operate. Once budgets are fixed and taxes equalized and apportioned, they generally remain fixed for a given tax year. The system is designed so that taxpayers and taxing districts will pay taxes and receive refunds if it is ultimately determined that property included is exempt or is excessively valued. To permit cancellation and non-payment of taxes during a tax year, without regard to budgetary needs and fixed apportionments, would wreak havoc upon the ability of governments to function. As a consequence, the system is generally designed to require payment of taxes for a given year, but to permit credits and readjustments in subsequent years when such credits and readjustments may be considered and reflected in budgetary needs and in tax plans. As provided in the statutes referred to above, taxing districts are required to pay county taxes regardless of whether collections are made and regardless of changes in assessments after the annual tables of aggregates are issued. However, they are required to give refunds or credits to individual taxpayers whose property *113 is ultimately held to be exempt or to have been excessively valued. See N.J.S.A. 54:4-8.2, 54:4-66, 54:4-96 et seq., Hahne Realty Corp. v. Newark, 119 N.J.L. 12 (E. & A. 1937); Edgewater v. Corn Products Refining Corp., 136 N.J.L. 664 (E. & A. 1947); Milmar Estate Inc. v. Fort Lee, 36 N.J. Super. 241 (App. Div. 1955); 713 Co. v. Jersey City, 94 N.J. Super. 210 (Law Div. 1967); Woodcliff Management v. North Bergen Tp., 106 N.J. Super. 292 (App. Div. 1969); East Orange v. Palmer, supra. To foster a system whereby taxing districts would have to pay county taxes, regardless of collection, and yet to make reimbursements to individual taxpayers subsequently held to be exempt without any future credit or readjustment in favor of the taxing district and its taxpayers, would be absurd. Although the 21 municipalities urge that there is dictum in East Orange v. Palmer, 47 N.J. 307, 318-319 (1966), which supports its contentions, I do not so read the Supreme Court's decision and, indeed, as indicated above, it is this court's view that the holding in the East Orange case supports the granting of the credit here for 1967 taxes.
It is therefore concluded that the city is entitled to credit for 1967 county taxes as determined by the county board.

V
The court is also of the opinion that the county board correctly allowed credits to the city for county taxes paid for 1968 and 1969. If such credits are properly allowable, it is clear that under the terms of N.J.S.A. 54:4-49 they are allowable in the 1970 table of aggregates and apportionment valuations as determined by the board, and none of the parties has argued to the contrary.
In the opinion of the court, the sole problem with the respect to the allowance of such credits stems from the fact that no formal appeals were taken with respect to the taxes for the years 1968 or 1969. As indicated above, it is apparent that the tax exempt status of the properties has *114 not changed since 1967, and Commissioner Glavin's opinion indicates that the investigations made by the board during the years in question confirmed that fact. Had there been a formal stipulation or agreement that the outcome of the 1967 appeal should govern the 1968 and 1969 taxes, the credits would clearly be allowable. See In re Appeal of East Orange, 103 N.J. Super. 109, 117 (App. Div. 1968). On the facts of this rather unique case, the court is of the opinion that the failure to take such appeals does not bar the granting of the credits and that the taking of such appeals, in the light of the statutory scheme with respect to exemptions and credits, was unnecessary. Any other holding, in all the circumstances, would be highly unrealistic and unjust.
As noted above, it is essential under our system of taxation that there be some final resolution of the yearly taxable status in order that the annual costs of government may be financed and the relative contributions by the several municipalities to the annual cost of county government be fixed. As a consequence, if a taxpayer wishes to challenge the assessed valuation or the exempt status of his property, he must normally exercise his statutory right to appeal or be deemed to have acquiesced in the tax status or valuation of his property. Suburban Department Stores v. East Orange, 47 N.J. Super. 472 (App. Div. 1957). Under our system, the assessment for each year is a separate entity, distinct from assessments for previous or subsequent years. See Aetna Life Ins. Co. v. Newark, 10 N.J. 99, 103 (1952); Hackensack Water Co. v. Division of Tax Appeals, 2 N.J. 157, 162 (1949); In re Mutual Benefit Life Ins. Co., 35 N.J. Super. 113, 116 (App. Div. 1955); In re Appeal of East Orange, supra. However, it is also clear that the system is designed so that costly and fruitless appeals are not needlessly required or insisted upon.
The two so-called "freeze" statutes, although not directly applicable, have some pertinence here. N.J.S.A. 54:2-43 provides, in part, as follows:
*115 Where a judgment final has been rendered by the Division of Tax Appeals in the State Department of Taxation and Finance involving real property such judgment shall be conclusive and binding upon the municipal assessor and the taxing district, parties to such appeal, for the assessment year and for the 2 assessment years succeeding the assessment year covered by the final judgment, except as to changes in the value of the property occurring after the assessment date. Where such changes are alleged, the petition of appeal shall specifically set forth the nature of the changes relied upon as the basis for such appeal.
N.J.S.A. 54:3-26, in identical terms, provides that where no appeal is taken to the Division of Tax Appeals to review the action of the county tax board involving real property, the judgment of the county board shall have the same conclusive and binding effect upon the municipal assessor and the taxing district for the assessment year and the two succeeding assessment years, except as to changes in value after the assessment date.[5]
The general purpose of these statutes was stated in Newark v. Fischer, 8 N.J. 191 (1951), to be as follows:
The evil which the "freeze" statute sought to remedy was repeated yearly increases in the assessed value of property, not related to or justified by any changes increasing its market value, and resulting *116 in harassment of the taxpayer, subjecting him to the trouble and expense of annual appeals to the county tax board. [at 199]
Although these statutes do not by their specific terms state that appeals for subsequent years need not be taken, it seems clear that, if the course of appeals involving the taxes for the assessment year carry beyond the assessment year, there is no necessity that appeals be taken with respect to taxes assessed in subsequent years in order for the conclusive effect of the judgment to be given under these "freeze" statutes in such subsequent years. It is settled that the judgment with respect to taxes for the assessment year relates back and "freezes" the assessment in the two subsequent years, in the absence of changes in value. See Newark v. Rockford Furniture Co., 4 N.J. Super. 205 (App. Div. 1949); In re Strauss, 28 N.J. Super. 526 (App. Div. 1953); Riverview Gardens v. North Arlington, 9 N.J. 167 (1952); Hamilton Gardens, Inc. v. Hamilton Tp., 45 N.J. Super. 124 (App. Div. 1957); Passaic v. Passaic Industrial Center, Inc., 59 N.J. Super. 174 (App. Div. 1960); Hasbrouck Heights v. Div. of Tax Appeals, 41 N.J. 492 (1967). And this is so even though no appeals were taken with respect to the assessments in the subsequent years. Union Terminal Cold Storage Co. v. Spence, 17 N.J. 162 (1954); see Passaic v. Gera Mills, 55 N.J. Super. 73, 93 (App. Div. 1959), certif. den. 30 N.J. 153 (1959). As stated by the Supreme Court in the Union Terminal case:
It is admitted no change as to valuation occurred here.
To insist, as the city does, that during the pendency of such appeal the taxpayer should appeal for each of the next two successive years and then on the coming down of the judgment make a further application to the county board would defeat the very purpose of the statute, which was to prevent the harassment of the taxpayer and reduce the number of appeals that had to be taken in each year to the various statutory and administrative tribunals; and to compel the taxpayer to have recourse to the courts, as was done in this case, is simply a further harassment of the taxpayer that the statute intended to obviate rather than encourage. [at 167]
*117 If the "freeze" statutes were controlling here, that would end the matter in view of the above precedents construing the statutes which hold that appeals in subsequent years are needless and unnecessary.[6]
Cases dealing with the "freeze" effect of judgments relating to the tax exempt status of property are surprisingly few in number. It is obvious that the usual problem involved in litigation is that with respect to increases or decreases in assessed valuations of taxable properties, and the "freeze" statutes were obviously designed primarily to apply in cases of the conventional type involving valuations of taxable property. However, the terms of the statute would appear to be broad enough to also apply in cases involving the exempt status of property. The only language of the statutes, as originally enacted, that may be urged to be at all inappropriate to coverage in exempt status cases is that portion of each statute which provides that the judgment shall be conclusive "except as to changes in value of the property occurring after the assessment date." If the word "value" were construed to mean "taxable value" and thus to include cases where the value is zero because the property is exempt, which would be consistent with the quoted statement of the Supreme Court in Newark v. Fischer, supra, the plain language of the statutes would cover exempt status cases. Although the statutes may have been designed primarily to apply in conventional valuation cases, there would seem to be no reasons of policy, if their terms warrant it, why the statutes should not apply in *118 exempt status cases equally as well and as laudably as in conventional valuation cases. There is no policy reason why a judgment holding that property is exempt, or that it does not have exempt status, shall not bind the assessor and the taxing district for two years subsequent to the assessment year, except as to changes in taxable value, i.e., exempt status, of the property after the assessment date.
However, in Newark v. Fischer, 8 N.J. 191 (1951), it was held that the "freeze" statute, N.J.S.A. 54:3-26, did not apply in a tax exempt status case, the court saying (at 200) that "It has no application, either by its phraseology or its obvious intent, to determinations of the tax exempt status." In Blair Academy v. Blairstown, 95 N.J. Super. 583 (App. Div. 1967), certif. den. 50 N.J. 293 (1967), the Appellate Division approved the decision of the Division of Tax Appeals that N.J.S.A. 54:2-43 did not apply in a tax exempt status case, citing Newark v. Fischer. So far as this court can determine, these are the only two reported decisions in which the "freeze" statutes have been cited in cases in which the problems of tax exemption, as distinguished from conventional valuation problems, were involved. It may be noted that in neither case was the holding as to applicability of the statutes the sole ground for decision. In Newark v. Fischer, the decision of the county board, relied upon as "freezing" the exempt status for the following year, had in fact been appealed to and reversed by the Division of Tax Appeals, but it was held that the appeal to the Division was out of time. The decision of the county board was in fact erroneous as a matter of law and the taxpayer was not entitled to exemption as a matter of law. In Blair Academy v. Blairstown, although the decision of the Division of Tax Appeals was affirmed to the extent that it held the "freeze" statute not applicable, the Division's decision was reversed on other grounds by the Appellate Division and the tax exempt status of the taxpayer was recognized. Neither directly involved the precise problems presented here.
*119 Nevertheless, the decisions are binding upon this court and I find that the "freeze" statutes are not directly applicable here. However, the statutes and the cases construing them do have a bearing upon the construction and application of other statutes pertinent here, and they support the determination of the court that the taking of appeals in the subsequent years of 1968 and 1969 was unnecessary. This conclusion flows from the application of the provisions of N.J.S.A. 54:4-4.4 which relates to the filing of statements of exemptions.
Prior to 1954 N.J.S.A. 54:4-4.4 provided that the municipal assessor was required, on or before October 1 of each year, to obtain an initial or an additional statement of exemption under oath from each owner of real property for which tax exemption was claimed. By L. 1954, c. 102, the statute was amended to require that such statements be obtained only once each three years. The pertinent portion of the statute reads as follows:
Every municipal tax assessor shall, on or before October 1, 1951, obtain from each owner of real property in his taxing district, for which a tax exemption is claimed, an initial statement under oath in such form as shall be prescribed by the Director, Division of Taxation, showing the right to the exemption claimed. Thereafter, and on or before November 1 of each year, said assessor shall obtain an initial statement, if one has not theretofore been filed. When an initial statement has theretofore been filed, then not later than November 1, 1954, and thereafter not later than November 1 of every third succeeding year, said assessor shall obtain a further statement under oath from each owner of real property for which tax exemption is claimed, provided, however, that nothing herein contained shall require a further statement to be filed in the same year in which an initial statement shall have been filed but that the further statement shall thereafter be filed at the time and in the years hereinabove required for the filing of further statements. Each assessor may at any time inquire into the right of a claimant to the continuance of an exemption hereunder and for that purpose he may require the filing of a further statement or the submission of such proof as he shall deem necessary to determine the right of the claimant to continuance of the exemption. Such further statement shall be in such form as shall be prescribed by the director and shall set forth.
*120 (a) Whether there has been any change of use of any of such property initially determined as being entitled to exemption during any 3-year period as aforesaid which would defeat the right of exemption therein, and
(b) Whether any new or additional property has been acquired for which a tax exemption is claimed and showing initially as to such new or additional property, the right to the exemption claimed.
The municipal tax assessor shall obtain the aforesaid statements in duplicate from the property owner, and the assessor shall file the duplicate copy thereof with the county board of taxation with his list of property exempt from taxation on or before January 10 following.
The "Statement of Purpose" attached to L. 1954, c. 102, which effected the amendment, recited in part:
This bill is designed to require property owners claiming tax exemption to file a "further statement" with the local assessor every 3 years instead of annually, as at present.
Under existing law (P.L. 1951, c. 135), "further statements" showing changes in use of exempt property and new property acquisitions for which exemption is claimed, must be filed annually. Since the vast majority of properties for which exemption has been claimed indicate no change from year to year, the annual filing of a `further statement' entails an unnecessary requirement on the part of exemption claimants. The 3-year requirement is believed to be adequate to apprise assessors of all pertinent changes. The date for filing initial and further statements has been changed from October 1 to November 1, to conform to existing practice in handling applications for exemption.
This statute, although not as precise as the "freeze" statutes, which in themselves mentioned nothing about taking appeals in subsequent years, has a similar effect insofar as the res judicata or collateral estoppel effect of the 1969 judgment of the Supreme Court with respect to the 1968 and 1969 taxes is concerned, and it has the same effect as the "freeze" statutes so far as the necessity of taking appeals in those subsequent years is concerned. There is legislative recognition in this statute that exempt status does not change frequently in the usual case, and that where a final determination is made of exempt status, it should have some binding or "freeze" effect for three years unless there is an actual *121 change in status.[7] In this case there was a final determination that the properties were tax-exempt in 1967 and it is conceded that there has, in fact, been no change in tax exempt status. In these circumstances it is the opinion of the court that the decision of the Supreme Court is to be given binding effect for the two subsequent years of 1968 and 1969, absent a showing of change, and that the policy and purpose of N.J.S.A. 54:4-4.4, much like that of the "freeze" statutes, renders unnecessary the taking of separate appeals during the two subsequent years. Such appeals would have been wholly idle and fruitless, and to insist that they be taken would, in the circumstances, be unjust. Decisions such as Union Terminal Cold Storage Co. v. Spence, 17 N.J. 162 (1954), are, in the opinion of the court, controlling and dispositive. See also Farmingdale Realty Co. v. Farmingdale, and Blair Academy v. Blairstown, supra; Port of New York Authority v. Newark, 20 N.J. 386, 388 (1956). And see other statutes relating to the continuing effect of other exemptions, such as N.J.S.A. 54:4-3.31, 54:4-3.32, 54:4-3.51, 54:4-3.60 and 54:4-8.45. The court's holding is not, in the circumstances, a deviation from the rules of collateral estoppel and res judicata as they apply generally to successive tax assessments. See Aetna Life Ins. Co. v. Newark, supra; In re Kresge-Newark, Inc., 30 N.J. Super. 489 (App. Div. 1954); In re Mutual Benefit Life Ins. Co., 35 N.J. Super. 113 (App. Div. 1955); Hasbrouck Heights v. Division of Tax Appeals, 54 N.J. Super. 242 (App. Div. 1959); In re Appeal of East Orange, 103 N.J. Super. 109 (App. Div. 1968).
It is also the opinion of the court that even though no formal understanding was entered into between the parties that the ultimate resolution of the 1967 tax status should *122 control for the years 1968 and 1969, and even though no formal appeals were taken for these subsequent years, the parties are in the same position on the facts of this case as though there had been such understanding or formal appeals. It is perfectly obvious that the parties were vigorously litigating the question of the exempt status of the properties which involved matters of great public interest. The litigation required more than two years to run its course. No county taxes were paid voluntarily. Cf. Suburban Dept. Stores v. East Orange, 47 N.J. Super. 472 (App. Div. 1957). Unlike the normal case, it was not the taxing district, the City of Newark, which listed the properties as taxable in 1968 and 1969, but rather the county tax board, which did so acting to perform its functions on behalf of all the municipalities and all the taxpayers of the county to insure full and fair taxation. The City of Newark, regardless of collections, was compelled by statute to pay the county taxes and it did so, in part at least, after litigation to compel payment had been filed by the county. See Lerner v. McDowell, Docket L 22661-67 P.W. Obviously all the parties conceived that the pending litigation would be dispositive of the tax-exempt status for the succeeding years in the absence of a change of circumstances, and the county board actually investigated each year to determine that matter. A simple stipulation in the pending cause that it would bind with respect to the 1968 and 1969 taxes would clearly have served to render the taking of formal appeals for those years unnecessary.
In the opinion of the court there is no doubt that the parties intended the ultimate decision of the Supreme Court to be controlling for all the years in question and the County Board, as indicated by its resolution in the matter and the opinion of Commissioner Glavin, conceived this to be so. On the facts it is clear that no county taxes were paid voluntarily in 1968 and 1969 and no waivers with respect to exempt status or credits were intended. The absence of a formal understanding or stipulation and the *123 failure to comply with the technicality of the filing of formal appeals do not, under all the facts, bar the claims for credits. Cf. In re Appeal of East Orange, 103 N.J. Super. 117 (App. Div. 1968). And, in the circumstances of this case, the action of the county tax board may be sustained as a proper exercise of its powers under N.J.S.A. 54:4-47 and other statutes governing its powers and functions. See Passaic v. Passaic County Board of Taxation, 18 N.J. 371 (1955); Berkeley Heights Tp. v. Division of Tax Appeals, 68 N.J. Super. 364 (App. Div. 1961), certif. den. 36 N.J. 138 (1961); see East Windsor Tp. v. Division of Tax Appeals, 89 N.J. Super. 282 (App. Div. 1965), certif. den. 46 N.J. 338 (1966), and Farmingdale Realty Co. v. Farmingdale, supra.
The decision of the County Board is therefore affirmed and the motions of the municipalities are denied.

ADDENDUM
Since the handing down of the court's opinion, it has been advised of the decision by the Appellate Division on April 7, 1970, of the case of Catholic Charities of the Diocese of Camden v. City of Pleasantville, 109 N.J. Super. 475. That decision is directly in point that the claims of the City of Newark for credits for 1968 and 1969 county taxes are not barred by the failure to take formal appeals with respect to those years, and it is dispositive of the matters referred to in point V of my opinion.
NOTES
[1] The question of exhaustion of administrative remedies was apparently not in issue, because, as stated in the pretrial contentions of the county board, the Port Authority appealed the determination of the county board to the Division of Tax Appeals and by agreement with the county board the appeal before the Division of Tax Appeals was stayed pending the outcome of the Law Division action.
[2] Commissioner Glavin's written opinion raised a question as to the proper method of calculating the credits allowed by the board, referring to a possible "discrepancy" in the method of such calculation, as prescribed by the Director of the Division of Taxation by regulation authorized by N.J.S.A. 54:4-49(d), which might result in a credit to Newark greater than the amount of taxes paid. The actual resolution or "final decision" of the board made no reference to the actual amount of credits to be allowed or to any discrepancy or problem in computing the same. At the hearing on April 7, 1970 it transpired that there was probably no problem or discrepancy as to the calculation of said credits and no likelihood of "over-credit." The Director's regulation was not offered for review or interpretation in this regard, nor was the actual dollar amount of credits brought into issue. The 21 municipalities abandoned such portion of their motion as sought relief designed to prevent any credits in excess of the amount of overpayment of taxes for any of the years in question. All parties concurred that no such matter was before the court. Thus any problem as to the interpretation or application of the regulations governing actual calculation of credits, which might be fairly urged to involve matters of "tax expertise" peculiarly fit for review by the Division of Tax Appeals, is not in issue.
[3] Emphasis added by the court in all quotations unless otherwise noted.
[4] The fact that assessors are required by N.J.S.A. 54:4-27 to "value" exempt properties and enter a description of such exempt properties on a separate list and to include totals in the Table of Aggregates pursuant to N.J.S.A. 54:4-52 does not mean that said properties are "assessed" in the technical sense. See Aichele v. Borough of Oaklyn, 1 N.J. Super. 621, 626 (Law Div. 1948); Gualano v. Board of School Estimate of Elizabeth School Dist., 72 N.J. Super. 7, 20-21 (Law Div. 1962) aff'd. 39 N.J. 300, 307-314 (1963).
[5] Both N.J.S.A. 54:2-43 and N.J.S.A. 54:3-26 were enacted by L. 1946, c. 161. The portion of N.J.S.A. 54:2-43 quoted above constitutes the statute as it was originally enacted in 1946. By L. 1957, c. 36 each statute was amended to add a sentence as follows:

However, the conclusive and binding effect of such judgment shall terminate with the tax year immediately preceding the year in which a program for a complete revaluation of all real property within the district has been put into effect.
A portion of the "Statement of Purpose" with respect to the 1957 amendment reads as follows (R.S. Cum. Supp., 1957, p. 645):
The purpose of the amendments contained in this bill is to nullify the "freeze" for the year in which a program for the complete revaluation of all real property within the district has been put into effect and, at the same time, to protect the property owner from the abuses which led to the adoption of the "freeze" statutes 10 years ago.
[6] The "freeze" statutes by their express terms give conclusive effect to judgments of the Division of Tax Appeals and of county boards of taxation. It is the opinion of the court that similar conclusive effect would be given under said statutes to judgments of the Supreme Court or any other court reviewing the judgments of the Division or such boards, and to the judgments of courts where exhaustion of the administrative remedy of appeals to these agencies has been dispensed with. See Hasbrouck Heights v. Division of Tax Appeals, 41 N.J. 492, 494-495 (1967).
[7] It is the duty of the municipal assessor to obtain statements of exemption from the taxpayer and his failure to do so does not deprive the taxpayer of exemption. Blair Academy v. Blairstown, supra.