NEW JERSEY TURNPIKE AUTHORITY, PETITIONER-RE-SPONDENT, v. TOWNSHIP OF WASHINGTON IN THE COUNTY OF MERCER AND TOWNSHIP OF EAST WIND-SOR IN THE COUNTY OF MERCER, DEFENDANTS-APPELLANTS.

Argued May 31, 1954—Decided June 21, 1954.

*Mr. Harvey T. Satterthwaite* argued the cause for the appellants (*Messrs. Satterthwaite and Satterthwaite,* attorneys).

*Mr. Ward J. Herbert* argued the cause for the respondent (*Mr. Donald S. Bowie, Jr.,* on the brief).

The opinion of the court was delivered by

VANDERBILT, C. J. By consent five appeals have been consolidated for argument.

Washington Township assessed to the New Jersey Turnpike Authority for the year 1952 ten tracts of land totalling 511 acres owned by it located outside its 300-foot right of way. The present appeals involve three of these tracts totalling approximately 202 acres. The 300-foot right of way of the Turnpike has never been taxed and there are no interchanges, service or maintenance areas or other installations of the Turnpike Authority located in Washington Township outside of the right of way.

East Windsor Township assessed to the Turnpike Authority for the year 1952 three tracts of land owned by it located outside its 300-foot right of way. These tracts total approximately 211 acres. The present appeals involve two of these tracts totalling 210 acres. East Windsor Township has granted tax exemption, in addition to the 300-foot right of way, to all the land outside the right of way acquired by the Turnpike Authority for its Hightstown interchange and an additional exemption of 40 acres for land which the assessor found to be in use as a source of fill dirt and as a dump by the Turnpike Authority.

The New Jersey Turnpike Authority petitioned the Mercer County Tax Board for the cancellation of the assessments on all its properties in Washington and East Windsor Townships located outside the Turnpike right of way. The Mercer County Tax Board dismissed the petitions and affirmed the assessments. On the Turnpike Authority's petition the Division of Tax Appeals reversed the Mercer County Tax Board and ordered the assessments cancelled under the

authority of *R. S.* 27:23-12. The two townships appealed to
the Appellate Division of the Superior Court and before
hearing thereon we certified the appeals on our own motion.

Before their acquisition by the Turnpike Authority the
lands involved in these appeals were used for farming. Since
then they have not been used and despite some vague testi-
mony to the contrary it is now conceded that there is no
likelihood of their being used in the future for turnpike
purposes. On the contrary, it is the announced intention of
the Turnpike Authority to dispose of them as surplus prop-
erty as soon as it conveniently can. In extenuation of its
delay in disposing of these properties the Authority states
that they are mere parts of former farms that have been cut
in two by the construction of the Turnpike and that some
of them are without access to a public road and that the
number of prospective buyers is therefore distinctly limited.
On the other hand, the appellant townships point out that
although some of the individual tracts lack access to a pub-
lic road, all of them by reason of their common ownership
by the Turnpike Authority do have access to public roads,
that their value is deteriorating for lack of cultivation and
that the Turnpike Authority has not made any real· effort
to sell them.

The single issue before us is whether or not the Turnpike
Authority has an unlimited right to tax exemption, including
even such property as is not used as part of the turnpike
project.

■■ 1. At the outset the appellant townships question
the right of the Turnpike Authority to acquire more land
than it needed for turnpike purposes. They say that the
power of Turnpike Authority to condemn land is limited to
the statutory objectives set forth in its enabling act, *i. e.*, the
"construction, operation and maintenance of turnpike proj-
ects," *N. J. S. A.* 27:23-3, and the acquisition of such land
as "it may determine is reasonably necessary" therefor, *N. J.
S. A.* 27:23-5(*j*), and that there is no statutory authority
for the acquisition of lands not needed for turnpike purposes
merely because, as here, such additional lands are owned by

the same individuals who own land required for turnpike purposes. The enabling act of the Turnpike Authority does not authorize excess condemnation. While condemnation either of the fee or a lesser interest is limited to those lands reasonably necessary for the achievement of the statutory purpose, it is well recognized in practice that in obtaining property for any public project acquisition by purchase may in many instances be more in the public interest than acquisition by condemnation, for it may be more economical to buy an entire tract than to condemn part of it and to pay compensation for damages to the remainder. Accordingly, in acquisitions by purchase more latitude necessarily is allowed as to the quantity of land bought than would be permissible when proceeding by condemnation. Taking all of an owner's land by purchase may be more in the public interest (as well as in the owner's interest) than acquiring a part by condemnation. Apparently such was the case in the present instances, and in the absence of bad faith, which is not charged here, the practice should be encouraged. Condemnation is a rugged remedy so far as the citizen is concerned and should not be resorted to needlessly, even though the power is granted, unless required in the public interest.

But the right to acquire by purchase a larger amount of land than would have been permitted by condemnation does not imply a power to retain any land thus acquired that is not intended for a public purpose and the burden of making out a case for utilization of such land rests on the Turnpike Authority. The permanent taking of private property can be justified only if in the public interest and for the purposes specified in the enabling act. Were the rule otherwise, in these days of expanding governmental activities the amount of property remaining in private hands would be uselessly diminished, adversely affecting the taxing power of the State, which necessarily depends in large measure on the amount of private property available for taxation.

2. The same considerations that control with respect to the amount of land acquired by the Turnpike Authority apply with respect to the related problem of exemption from

taxation. While the Turnpike Authority Act may seem at first blush to exempt from taxation the property here under consideration as "property acquired or used by the Authority under the provisions of this act," *N. J. S. A.* 27:23–12, and while a literal application of the language of the statute has been held in *Port of New York Authority v. Union City*, 19 *N. J. Misc.* 421 (*Sup. Ct.* 1941), to justify exemption from taxation of property "not so used because not needed" (at *p.* 422), the quoted language of the statute is not to be read alone, but it must be construed in the light of the provisions of the State Constitution and the law of this State relating to taxation. When so read it inevitably leads to a different conclusion and requires the overruling of the holding in *Port of New York Authority v. Union City, supra.*

The taxing power lies at the heart of government. Without taxes government could not function. Any impairment of the taxing power affects the lifeblood of government. Accordingly claims for tax exemption have to stand scrutiny to show that they serve a public purpose, *Trustees of Rutgers University v. Piscataway Township*, 134 *N. J. L.* 85 (*Sup. Ct.* 1946), where a stadium occasionally or incidentally used for educational purposes was held not to come within the statutory requirement for the exemption of land "actually used for colleges." (at *p.* 88) See *Sisters of Charity of St. Elizabeth v. Cory*, 73 *N. J. L.* 699, 706 (*E. & A.* 1907); *Board of National Missions v. Neeld*, 9 *N. J.* 349, 353 (1952); *City of Perth Amboy v. Barker*, 74 *N. J. L.* 127 (*Sup. Ct.* 1906). A fortiori vacant land, as here, not now in the public use or presently intended for public use is taxable even when owned by bodies having a right to tax exemption with respect to property used for an appropriate purpose. See *Stevens Institute of Technology v. State Board*, 3 *N. J. Misc.* 1094 (*Sup. Ct.* 1925), affirmed 102 *N. J. L.* 727 (*E. & A.* 1926), *Cooper Hospital v. Camden*, 68 *N. J. L.* 691, 706, 707 (*E. & A.* 1903).

Moreover, tax exemption statutes, if based on the personal status of the owner rather than on the use to which the property is put, run afoul of the tax article of the Constitu-

tion of 1947 which provides in part: "Property shall be assessed for taxation under general laws and by uniform rules," *Const. Art.* VIII, *Sec.* I, *par.* 1. The similar provision of the *Constitution of* 1844, *Art.* IV, *Sec.* VII, *par.* 12, that "Property shall be assessed for taxes under general laws, and by uniform rules, according to its true. value," has been soundly construed to prohibit such exemptions:

"The decisions construing this ·constitutional provision, in so far as they have sanctioned classifications as the basis of legislation, either for taxation or for exemption, have done so upon the express ground that such classifications were based upon features that inhered in the property itself, or in the purposes to which it or its usufruct was devoted. To substitute for property in such classifications the persons who own property, and then to base the proposed exemption upon the *status* or vocation or avocation of such persons, is without any constitutional warrant. Exemptions from taxation, therefore, of property, real or personal, that are based not upon any characteristic possessed by such property, or upon the uses to which it is put, but upon the personal *status* of the owners of such property, are void." *Tippett v. McGrath,* 70 *N. J. L.* 110, 113 (*Sup. Ct.* 1903), affirmed 71 *N. J. L.* 338 (*E. & A.* 1904).

See *Essex County Park Commission v. West Orange,* 77 *N. J. L.* 575 (*E. & A.* 1909); *Camden v. Camden County Board of Taxation,* 121 *N. J. L.* 262 (*Sup.* Ct. 1938), affirmed 122 *N. J. L.* 381 (*E. & A.* 1939). We must decline to give a construction to the statute under consideration that would render it unconstitutional. The phrase "property acquired or used by the Authority under the provisions of this act," *N. J. S. A.* 27:23–12, *supra,* can only be saved by construing the phrase in the conjunctive. It applies to property acquired for turnpike purposes and, having been so acquired, used for such purposes, or held with the present design to devote it within a reasonable length of time to such use, *Collector of Taxes of Town of Milton v. City of Boston,* 273 *Mass.* 274, 180 *N. E.* 116, 81 *A. L. R.* 1515 (*Sup. Jud. Ct.* 1932). Any other construction under the constitutional provision above quoted which would be infringed thereby, would destroy the tax exemption of the Turnpike Authority on the strength of which it sold its

bonds and financed the construction of the Turnpike. There can be no doubt of the legislative intent in the premises, because all concerned recognized that without tax exemption of the property used for the Turnpike its bonds could not have been sold or the Turnpike constructed.

■ 3. Finally, it is argued by the Turnpike Authority that the property in question is exempt from taxation, apart from the statute under review, as property of the State, but the suggestion is without merit. The question was laid to rest in the very decision that sustained with a single exception not relevant here the constitutionality of the Turnpike Act, *New Jersey Turnpike Authority v. Parsons, 3 N. J. 235, 243* (1949), where we stated the relation between the State and the Turnpike Authority, and public corporations generally, and at the same time disposed of, or so we thought, the notion that the Turnpike Authority was the *alter ego* of the State:

"Though created by the State and subject to dissolution by the State, they are in the eyes of the law independent entities and the State is not responsible for their debts and liabilities, whether they be municipal corporations or counties or such specialized bodies as the Port of New York Authority; *cf. California Toll Bridge Authority v. Wentworth*, 212 *Cal.* 298, 298 *Pac.* 485 (1931). The fact that the members of the Turnpike Authority are appointed by the Governor with the advice and consent of the Senate rather than elected by the voters in nowise alters the status of the Turnpike Authority as an independent corporate entity any more than does the similar appointment of the members of the Port of New York Authority, *R. S.* 32:2–3, or the members of the Interstate Sanitation Commission, *R. S.* 32:19–1. The argument advanced is in effect an effort to apply the doctrine of piercing the veil of the corporate fiction used in the field of private corporations to prevent the fraudulent abuse of the device of incorporation at the expense of innocent parties, to the field of public law, where it is unknown and in circumstances where, instead of fraud and concealment, there is the utmost disclosure of the exact nature of the bonds being authorized not only by the enactment and publication of the statute here under review but by an appropriate legend on the face of each turnpike revenue bond. It is also objected that the Turnpike Authority is the *alter ego* of the State and not a self-sufficient public corporation because it is a body corporate and politic 'in the State Highway Department', *R. S.* 27:23–3. This statutory provision is manifestly intended to be a compliance with the constitutional provision re-

quiring that 'all executive and administrative offices, departments, and instrumentalities of the State government, including the offices of Secretary of State and Attorney General, and their respective functions, powers and duties, shall be allocated by law among and within not more than twenty principal departments', *Article* V, *Section* IV, *par.* 1. But the State Highway Commissioner is given no authority whatsoever over the Turnpike Authority. The Turnpike Authority is in but not of the State Highway Department and that fact does not make it any the less an independent entity, as the language of the entire Act clearly demonstrates."

The judgments of the Division of Tax Appeals in the Division of the Treasury are reversed and the assessments heretofore made by the appellant townships are reinstated.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING and BRENNAN— 6.

*For affirmance*—Justice JACOBS—1.