69 N.J. Super. 269 (1961)
174 A.2d 256
PALISADES INTERSTATE PARK COMMISSION, PETITIONER-RESPONDENT,
v.
BOROUGH OF FORT LEE, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 18, 1961.
Decided October 13, 1961.
*270 Before Judges PRICE, SULLIVAN and LEONARD.
Mr. William V. Breslin argued the cause for appellant.
Mr. Theodore I. Botter, Assistant Attorney-General, argued the cause for respondent (Mr. David D. Furman, Attorney-General, attorney).
The opinion of the court was delivered by LEONARD, J.S.C. (temporarily assigned).
This is an appeal from a judgment of the Division of Tax Appeals vacating an assessment for the year 1959 made by appellant upon certain lands owned by respondent. Originally, respondent appealed this municipal action to the county board of taxation and, upon affirmance, to the Division.
The respondent Commission is a bi-state, corporate municipal instrumentality. R.S. 32:17-4. The lands in question, consisting of approximately 32.78 acres, were conveyed to it in June 1944 and are located within the political *271 boundaries of the appellant borough. They are roughly rectangular in shape and are located at right angles to and contiguous with other lands owned by respondent, which run parallel to the Hudson River. Through them runs a highway spur, connecting the Palisades Interstate Parkway with New Jersey Highway Routes 4 and 46, this spur having been completed in 1954 or 1955.
At the Division hearing appellant conceded that the portion of said land comprising the roadway and embankment of the aforesaid spur was tax exempt and that only the assessment for the balance thereof, 18.18 acres, was in controversy. The same concession is made on this appeal.
The appellant espouses three reasons for the reversal of the division. They are:
(1) The respondent is not authorized by law to maintain park facilities in the area in question.
(2) The evidence indicates the lands in question were not used or reasonably maintained for public purposes on October 1, 1958, the assessing date.
(3) The moneys received by appellant "in lieu of taxes" does not bar the assessment.

I.
In order to fully comprehend this argument, the location of the various landmarks involved must be considered. The area concerned is the Palisades on the westerly side of the Hudson River just north of the George Washington Bridge. Hudson Terrace is a road running parallel to the river and approximately 400 to 600 feet west of the "crest line" of the Palisades. The disputed lands are at right angles to the river and west of both the "crest line" and Hudson Terrace.
The basis of appellant's contention is that respondent has no statutory authority to hold lands west of Hudson Terrace. It cites as authority for this N.J.S.A. 32:14-5, which provides as follows:
*272 "Palisades Interstate Park Commission shall, from time to time, select and locate such lands lying between the top or steep edge of the Palisades or the crest of the slope in places where the steep Palisade rocks are absent and the high-water line of the Hudson river, * * * as may, in the opinion of the commission, be proper and necessary to be reserved for the purpose of establishing a park and thereby preserving the scenic beauty of the Palisades."
The unsoundness of appellant's contention is clearly demonstrated by the provisions of the next section of said statute, N.J.S.A. 32:14-6, wherein it is provided:
"Palisades Interstate Park Commission shall have power to acquire, maintain and make available for use as part of Palisades interstate park the lands located as aforesaid, and, for such purpose, shall have power to take in fee or otherwise, by purchase, gift, devise or eminent domain, such lands or parts thereof, and any rights, interests and easements therein. The commission shall also have power to acquire by purchase, gift, or devise, but not by eminent domain, for the purposes herein set forth, any lands on the top of the Palisades or any rights, interests or easements therein. Deeds of conveyance for the lands shall be made to the commission by its corporate name." (Emphasis added)
The latter section gives to the respondent, in addition to the power as contained in the former, the power to acquire by purchase, gift or devise, but not by eminent domain, lands on the top of the Palisades. The photographic evidence establishes that the lands in question are on the top thereof. Having been conveyed to the respondent, there is statutory authority to maintain them.
Appellant's argument must fail for another reason. The Legislature in designating the alignment of the present Palisades Interstate Parkway specifically provided for the spur in question and designated it as a Parkway. N.J.S.A. 27:6-1 (L. 1947, c. 74, secs. 1 and 2).

II.
Appellant in support of this point contends that the respondent has held the property for 14 years without developing *273 it for park purposes and that the premises are not suitable therefor.
It argues that since respondent secured title thereto in 1944 no improvements were made thereon except the construction of the spur across it in 1954. It further points to the fact that it was used during this period for non-park purposes in that a portion thereof was rented to the Army for an anti-aircraft installation and, further, that respondent introduced and passed a resolution authorizing an agreement to locate a rock crusher on the same portion.
The evidence does not support these contentions. Respondent did not rent any portion of it to the Army. The Army occupied it until 1957 for an anti-aircraft unit under the national emergency and when it vacated the area paid the respondent a sum of money for restoration. The aforesaid agreement for the rock crusher was never consummated.
Now to the main issue herein  the use for park purposes. The spur has statutory designation as a parkway. N.J.S.A. 27:6-1, supra.
N.J.S.A. 27:7A-1 provides as follows:
"`Parkway' shall mean a State highway especially designed for through passenger traffic over which abutters have no easement or right of light, air or direct access, by reason of the fact that their property abuts upon such way, with special treatment in landscaping and planting between roadways and along its borders, which borders may also include service roads open to mixed traffic, recreational facilities such as pedestrian, bicycle and bridle paths, overlooks and picnic areas, and other necessary noncommercial facilities." (Emphasis added)
N.J.S.A. 27:7A-4 defines property needed for a parkway as follows:
"Property needed for any parkway is declared to be all those lands or interests therein required for the traveled way, together with those lands or interests therein necessary or desirable to provide land between roadways, occasional parking areas, treatment of borders and landscape areas, recreational facilities, * * *." (Emphasis added)
*274 The evidence discloses that respondent is using the area in harmony with this statutory design. It approved two plans for the development of Section A, the largest area  the first in 1952 or 1953, which was modified because appellant thought it would be too active a development and that people from New York walking across the bridge would usurp it. The second provides for a "sitting park," with provisions for ice skating in winter and roller skating in summer. Pursuant to these plans, respondent continuously has made requests to the Legislature for appropriations, but the same have not been made to date. A "sitting park" has been established by use of the Army restoration funds. Mr. Morgan, a witness for respondent, whose qualifications as an expert in public parks and parkways were not disputed, testified that in addition to future development of this area for fuller recreational use, this and the other smaller areas were necessary for landscaping and for the protection of the public in view of the fact that the adjacent area is building up so rapidly with apartment houses.
Respondent allocated the area 40% to highways and embankments, and 60% to bordering and landscape area. No proof was tendered to establish that this was unreasonable.
Under all the circumstances, we conclude that the evidence supports the conclusion reached by the Division that respondent was using the lands in question for park and parkway purposes. The delay in constructing the maximum recreational facilities by reason of lack of legislative appropriations does not negate this conclusion.
Appellant relies upon N.J. Turnpike Authority v. Washington Tp., 16 N.J. 38 (1954). That case is distinguishable. It was conceded therein that there was no likelihood of the lands being used in the future for turnpike purposes, and that it was the announced intention of the Turnpike Authority to dispose of them as surplus property as soon as it conveniently could. In determining that the lands were not tax exempt the court said, 16 N.J., on pages 44 and 45:
*275 "* * * vacant land, as here, not now in the public use or presently intended for public use is taxable even when owned by bodies having a right to tax exemption with respect to property used for an appropriate purpose.

* * * * * * * *
It applies to property acquired for turnpike purposes and, having been so acquired, used for such purposes, or held with the present design to devote it within a reasonable length of time to such use * * *."
This distinction was recognized in Port of N.Y. Authority v. City of Newark, 20 N.J. 386 (1956), wherein a Port Authority terminal was held tax exempt even though then leased to the Army. The court concluded, at page 396, that it was being held by the Port Authority "with the present design to devote it within a reasonable * * * time to such use," and there was no proof to show that the Port Authority "has abandoned its original intent" to use it as a motor truck terminal.
Herein, the evidence adduced clearly supports the conclusion that respondent is using the lands for park and parkway purposes and has a present intention further to develop the same for such purposes.

III.
Our previous determination that these lands are tax-exempt is a full answer to this contention. However, even if that determination were otherwise, we deem this point to be without merit. The Legislature, pursuant to N.J.S.A. 54:4A-4 et seq., has made yearly appropriations from 1954 to 1960 for payment "in lieu of taxes" to appellant, and appellant has accepted payment of the same. There is in evidence invoices for 1959 and 1960 submitted and signed by officials of the appellant on its behalf. The 1959 invoice contained the following statement:
"For loss of tax revenue for local purposes from lands owned by Palisades Interstate Park Commission.
The payment herein made is in full settlement of all claims of every character, and the acceptance of said sum shall constitute *276 a full and complete release and acquittance to the State of New Jersey, its agencies, instrumentalities and employees."
The 1960 invoice contained the following:
"For loss of tax revenue for local purposes from lands owned by Palisades Interstate Park Commission."
The notation on this invoice  "This payment releases the Palisades Interstate Park Commission from all claims for taxes"  was crossed out before the invoice was submitted. However, both appropriation bills which approved the 1959 and 1960 payments "in lieu of taxes" contain the following provision (L. 1959, c. 107, at p. 499, and L. 1960, c. 45, at p. 187):
"The appropriations hereinabove made for claims are in full settlement of all claims of every character, and the acceptance of said sums shall constitute a full and complete release and acquittance to the State of New Jersey, its agencies, instrumentalities and employees."
The appellant's effort to nullify the release contained in the 1960 invoice is to no avail.
We conclude that these payments "in lieu of taxes" prohibit taxation by appellant for the same lands for the years that they were accepted. To rule otherwise would be to defeat the intended purpose of the Legislature in providing for these payments.
Judgment of the Division of Tax Appeals is affirmed.