84 N.J. Super. 19 (1964)
200 A.2d 793
THE TOWN OF BLOOMFIELD, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, APPELLANT,
v.
DIVISION OF TAX APPEALS IN THE DEPARTMENT OF THE TREASURY OF THE STATE OF NEW JERSEY, HOWARD D. JOHNSON COMPANY AND HOWARD JOHNSON, INC. OF NEW JERSEY, RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 27, 1964.
Decided May 29, 1964.
Before Judges CONFORD, FREUND and SULLIVAN.
*20 Mr. Joseph D. Lintott argued the cause for appellant.
Mr. Joseph A. Hoffman, Deputy Attorney General, argued the cause for respondent Division of Tax Appeals, etc. (Mr. Alan B. Handler, Deputy Attorney General, of counsel and on the brief; Mr. Arthur J. Sills, Attorney General of New Jersey, attorney).
Mr. William I. Riker argued the cause for respondents Howard D. Johnson Company and Howard Johnson, Inc., of New Jersey (Messrs. Riker, Danzig, Scherer & Brown, attorneys).
Mr. Theodore W. Geiser argued the cause as amicus curiae on behalf of the New Jersey Highway Authority (Messrs. Pindar, McElroy, Connell & Foley, attorneys).
The opinion of the court was delivered by FREUND, J.A.D.
The basic question involved on this appeal is whether a local taxing district is justified, under the purported authority of N.J.S.A. 54:4-2.3, in levying a real estate tax against a restaurant located on the Garden State Parkway. The statute reads:
"When real estate exempt from taxation is leased to another whose property is not exempt, and the leasing of which does not make the real estate taxable, the leasehold estate and the appurtenances shall be listed as the property of the lessee thereof, or his assignee, and assessed as real estate."
The property in question involves approximately one and one-half acres of ground, on which is located a Howard Johnson restaurant building and two parking areas. The point of controversy arises from the fact that access to the restaurant may be had via an improved roadway which connects the second parking area (located to the rear of the restaurant) with Broad Street, Bloomfield. This parking area is set off from the regular parking lot by barriers, so that local Bloomfield *21 traffic may not enter upon the Parkway proper. There can be no doubt that Howard Johnson induces the local population to patronize these restaurant facilities. The parties have stipulated that the business so derived "is substantial and perhaps in the neighborhood of 35 per cent of the total business."
Respondent Division of Tax Appeals determined that Howard Johnson's non-Parkway business was incidental to its primary public use and, relying upon the Supreme Court's opinion in Borough of Moonachie v. Port of N.Y. Authority, 38 N.J. 414, 426-27 (1962), cancelled an assessment of $91,100 ($18,700 on the land and $72,400 on improvements) levied by appellant Town of Bloomfield against Howard Johnson, Inc., for the year 1961. The assessment on the restaurant by the assessor of Bloomfield is purported to have been made under the authority of N.J.S.A. 54:4-2.3.
We need not discuss the scope and effect of N.J.S.A. 54:4-2.3 in relation to a problem of this nature in view of the Supreme Court's decision in Walter Reade, Inc. v. Dennis Tp., 36 N.J. 435, 439-41 (1962), holding that a facility of the kind here involved is entitled to exemption under the statute creating the New Jersey Highway Authority, N.J.S.A. 27:12B-1 et seq., and that the statutory purpose of exemption for such facilities cannot be avoided by use of N.J.S.A. 54:4-2.3. This ruling binds us unless the result is to differ because of the circumstance that this restaurant facility is not totally devoted to Parkway traffic, but receives 35% of its revenue from local, non-Parkway uses. We conclude that the scope and rationale of the Reade decision would not permit a variance from the result there reached on the basis of the special facts in this case. So far as the record before us indicates, the facility continues to be used for all of the intended statutory purposes as fully and unqualifiedly as though no local traffic were admitted to the building. There is nothing in the record which would indicate that the building or the land on which it stands would be any smaller, or the activity more restricted in scope, if non-Parkway patronage were excluded from the restaurant.
*22 It is clear that we are not here confronted with a situation such as that involved in N.J. Turnpike Authority v. Washington Tp., 16 N.J. 38 (1954). There the Authority was denied tax exemption as to three tracts of land totalling 202 acres which manifestly were not being used for Turnpike purposes. Indeed, it was conceded that the Turnpike Authority intended to dispose of the property as soon as it conveniently could. In the instant case there is no proof of that nature regarding either the site of the restaurant proper or lands contiguous thereto which Bloomfield claims in this appeal are excess and not needed for Parkway purposes. The forum for development of facts bearing upon such a contention is the trial tribunal, here the Division of Tax Appeals, and apparently no evidence on the subject was submitted there.
Indirect support of the conclusion that exemption is not here lost by reason of use of these facilities by non-Parkway customers to the extent of about 35% of total business is afforded by a dictum of the Supreme Court in the Moonachie case. The court there stated that it accepted the "basic principle" of the decision in Bush Terminal Co. v. City of New York, 282 N.Y. 306, 26 N.E.2d 269, 273 (Ct. App. 1940), that property of a tax exempt agency "employed primarily for a public use does not lose immunity because the agency incidentally derives some private business income from it." While this language was used in connection with a concept not precisely apposite to the present situation, it is nevertheless persuasive for sustaining the exemption as against the attack made in the present case. It may here be fairly said that this restaurant is used "primarily" for the public use of service to Parkway customers and that the non-Parkway portion of the business, although concededly substantial, is nevertheless an incidental source of additional revenue to the licensee. We are not now confronted with the question which may arise if it ultimately eventuates that most of the restaurant business comes from non-Parkway traffic.
The situation here is not properly to be analogized to the holding, as distinguished from the dictum, in the Moonachie *23 case, however. Moonachie involved a tax levied directly against the Port of New York Authority, rather than an attempt to tax a leasehold estate under N.J.S.A. 54:4-2.3. The Supreme Court held that a structure leased by that Authority and used entirely for the nonpublic purpose of manufacturing for private profit could properly be carved out of the statutory tax exemption and made subject to local taxation because it was not devoted to the public use with respect to which the statutory exemption was granted. In so deciding the court nevertheless held the land on which the structure stood, which was still serving its original purpose as a "buffer zone" between Teterboro Airport and surrounding areas, to justify continued exemption. In the present case there is no convenient or familiar technique for apportioning the property in question between tax-exempt and taxable uses. The separate assessability of improvements, as distinguished from land, is historic in our statutory scheme of taxation, and the court in Moonachie could therefore properly have hypothesized a legislative intent to deny the exemption to improvements while continuing to accord it to the underlying land in the circumstances there presented. In relation to the present case, there is no existing assessment technique which one can reasonably hypothesize the Legislature would intend to employ for partial assessment of the undivided restaurant property, devoted, as it is, as an integrated facility for restaurant purposes.
The foregoing reasoning also serves as a basis for rejection of the Attorney General's position in this case, specifically, that taxes on the property may be apportioned so as to reflect an assessment for the nonexempt use of serving non-Parkway patrons, and leaving the property exempt to the extent that it serves Parkway traffic. Although it may seem on principle an equitable solution to deny the exemption in proportion to the nonpublic use, there is no New Jersey authority, statutory or judicial, for such action. Indeed, the concept of continuing complete tax exemption despite "incidental" earnings from private customers is not a new one in our law. See, *24 e.g., City of Perth Amboy v. Barker, 74 N.J.L. 127, 130 (Sup. Ct. 1906); Camden County v. Washington Township, 60 N.J.L. 367, 369-70 (Sup. Ct. 1897); Newark v. Verona Township, 59 N.J.L. 94, 96 (Sup. Ct. 1896). Neither Moonachie nor N.J. Turnpike Authority v. Washington Tp. is sufficiently analogous to substantiate the argument for a proportionate denial of tax exemption in the instant case. The Attorney General's argument is further weakened by the extreme impracticability from an assessor's point of view of having to change the assessment each year based upon what proportion of the business of the restaurant, as of the preceding October 1 (the assessing date), was being done with non-Parkway customers as distinguished from Parkway customers.
From all of the foregoing we conclude that so long as the major function of a restaurant facility located on the Garden State Parkway continues to be effective service to users of the Parkway, the tax exemption accorded such a facility by the statute, as construed in the Reade case, is not lost in whole or in part when a minor, even though significant, portion of its total business is derived from non-Parkway patrons.
Affirmed.