ANDREW, J. T. C.
The New Jersey Turnpike Authority (Authority) appeals from judgments of the Middlesex County Board of Taxation denying its claim of tax exemption for the tax year 1975 for real property acquired by the Authority for the purpose of constructing an expressway from the vicinity of South Brunswick to Toms River.
This appeal was taken to the Division of Tax Appeals of the Department of the Treasury and transferred to this court pursuant to N.J.S.A. 2A:3A-26. The matter has been submitted to the court on an agreed statement of facts and accompanying legal briefs.
*373 The Authority was authorized and empowered to construct an expressway from the area of South Brunswick, through Monroe Township, to Toms River, by passage of N.J.S.A. 27:23-23.3, enacted May 25, 1972. This undertaking, commonly known as the Toms River Expressway Project, was made contingent on the preparation by the Authority of an environmental impact statement and the subsequent approval of the Governor. N.J. S.A. 27:23-23.4, 23.5. An environmental impact statement was prepared, public hearings were held and the required approvals were obtained on April 13, 1973. Thereafter, on May 1, 1973, the Authority sold $210,000,000 in revenue bonds to finance necessary engineering, land acquisition and construction costs. Land acquisition commenced in September 1973 through negotiated agreements with affected property owners and the filing of condemnation actions in Superior Court. The properties acquired in Monroe Township are the subject of this proceeding.
In January 1974 Governor Byrne took office and indicated to the Authority that the project should not be commenced pending review and direction by his administration. Suits against the project had been filed by the Townships of South Brunswick and Monroe in 1973. They resulted in a June 17,1974 decision of the Appellate Division of the Superior Court invalidating the approvals for the project. South Brunswick Tp. v. New Jersey Turnpike Auth., 129 N.J.Super. 126, 322 A.2d 478 (App.Div.1974). Thereafter, the New Jersey Supreme Court denied a petition for certification filed by the Authority. South Brunswick Tp. v. New Jersey Turnpike Auth., 66 N.J. 334, 331 A.2d 34 (1974). The Authority ceased further land negotiations but continued through to conclusion, in 1975 and 1976, several condemnation actions that were begun in 1973 and 1974. Engineering and design work was continued on the project to substantial completion in early 1975.
During the pendency of South Brunswick Tp. v. New Jersey Turnpike Auth., supra, the Legislature passed a bill directing the preparation of a railway study for the expressway project corridor. It provided:
*374 The Authority is directed to prepare a study examining the feasibility and practicability of constructing and operating a railroad upon lands heretofore and hereafter acquired by the Authority as right-of-way for the project addition and extension authorized by P.L.1972, c. 28 (C. 27:23-23.3 et seq.). The study, which shall be paid for from funds of the Authority, shall be prepared in accordance with guidelines and procedures specified by the Department of Transportation. At the completion of such study the Authority shall furnish promptly a report thereof to the Governor and to the Commissioner of the Department of Transportation. [L. 1974, c. 60 (June 28, 1974)]
The Authority completed and forwarded the study in July 1975.
At or about the time the Authority acquired each of the subject properties it filed a statement of exemption from local property taxation pursuant to N.J.S.A. 54:4 — 4.4, asserting that the properties were entitled to the exemption provided by N.J. S.A. 27:23-12 for Turnpike Authority property. Monroe Township continued to assess the properties, however, and appeals were taken to the Middlesex County Board of Taxation contesting the assessments for the tax year 1975. The county tax board ruled that the property was not exempt, and timely appeals from that determination were made to the Division of Tax Appeals. The Authority did not file tax appeals for any year other than 1975 although it continued to receive tax bills from the township in 1976, 1977 and 1978. The Authority did, however, file statements for exemption, pursuant to N.J.S.A. 54:4 — 4.4, in 1974 and 1977.
During the years 1976 through 1978 the Authority retained the subject properties and the completed engineering plans and awaited further direction from the Governor’s office. Meetings were held during this period between the Authority and state officials in which the State indicated that the project should be held in abeyance pending further clarification as to its need, viability and impact. The Authority’s basic intent and position during this period, as stipulated by the parties, was “to initiate and construct the Project as soon as the further direction and approval of the State was obtained.”
As a result of the accumulation of a number of factors during this period, including the necessity for preparation of additional studies, the impact of energy costs upon governmental assessment of highway projects, the anticipated traveling habits of the *375 public, the estimated growth of the Ocean County area and the substantial inflation of construction costs, the Authority Commissioners, around June 1979, determined that the project was no longer viable or feasible and decided that the acquired properties should be sold. Reappraisals were commissioned and brokers have been retained toward that end.
The Authority seeks an exemption for the subject properties for the tax year 1975, for which an appeal was properly filed, and for the years 1976, 1977 and 1978, for which it is conceded no timely appeals were filed. As to the three latter years, the Authority urges the court to consider its claim for exemption nunc pro tunc. For all the years the Authority asserts that the subject property is entitled to an exempt status pursuant to N.J.S.A. 27:23-12 and the relevant case law. Defendant Monroe Township disputes the Authority’s contentions, both procedurally regarding the jurisdiction of the court to hear and determine the plaintiff’s claim for the years 1976, 1977 and 1978, and as to the merits of the exemption claim for the tax year 1975 and any later years for which the court may determine it has jurisdiction.
I
Before reaching the merits of the Authority’s entitlement to an exemption from taxation for the subject properties, the court must consider the Authority’s request that the tax years of 1976, 1977 and 1978 be included in this appeal.
For the tax year 1975 the Authority filed timely appeals with the Middlesex County Board of Taxation and, subsequent to that body’s denial of exemption, the Division of Tax Appeals. For that year the court’s jurisdiction is not questioned. However, appeals were not filed for any year other than 1975. The Authority asks the court to consider its appeals for 1976, 1977 and 1978 nunc pro tunc.
N.J.S.A. 54:3-21 provides an avenue of appeal for a taxpayer aggrieved by the assessment of his real property. In those cases in which the assessed value of the property does not exceed *376 $750,000, as here, a taxpayer must first file an appeal with the county tax board. The appeal must be filed no later than August 15 of the tax year. If either the taxpayer or the taxing district is dissatisfied with the judgment of the county tax board, an appeal may be filed with the Tax Court within 45 days of service of the judgment. N.J.S.A. 54:2-39. It is conceded that no appeals were filed for the years 1976,1977 or 1978. The time for filing appeals for those years has long since passed.
The Authority explains that as to 1976,1977 and 1978 it relied upon the triennial statements of exemption it filed pursuant to N.J.S.A. 54:4-4.4, which it interpreted to have a “freezing” effect on the exempt status of property for the three years covered by the statement.[1] Statements were filed in 1974 and 1977. When the first statement was filed, the Authority’s reliance upon it was justified. Two cases decided in 1970 had held that the filing of an exemption statement did serve to freeze the exemption for three years. Catholic Charities of Camden Diocese v. Pleasantville, 109 N.J.Super. 475, 263 A.2d 803 (App.Div.1970); Newark v. Essex Cty. Bd. of Tax., 110 N.J.Super. 93, 264 A.2d 461 (Law Div.1970). The law changed however, on March 1, 1977, when the Supreme Court decided Boys’ Club of Clifton, Inc. v. Jefferson Tp., 72 N.J. 389, 371 A.2d 22 (1977).
Boys’ Club involved a challenge by a nonprofit corporation of an assessment on certain real property it owned, for the tax years of 1971 and 1972. The property had previously been tax exempt. The Supreme Court reversed the judgment of the Appellate Division and ordered that the property be exempt from taxation for those years. The taxpayer also sought an exempt status for the property for the years 1973 and 1974, even though no appeals were taken for those years. It had relied *377 upon Catholic Charities and Newark, supra, and statements of exemption that had been filed pursuant to N.J.S.A. 54:4-4.4. The Supreme Court held that the filing of an exemption statement does not excuse the taxpayer from filing annual appeals, and overruled the earlier cases to the extent they were inconsistent with the decision in Boys’ Club. However, since the taxpayer had justifiably relied on those decisions in not filing appeals in 1973 and 1974, it was deemed to have filed nunc pro tunc for those years. The taxpayer herein urges this court to follow the lead of the Supreme Court in Boys’ Club and allow a nunc pro tunc filing for 1976, 1977 and 1978.
The circumstances of the Boys’ Club case are, to a degree, present here. To the extent that a taxpayer justifiably relied on decisions of courts of this State holding that a statement of exemption freezes a tax exemption for three years, Boys’ Club permits a nunc pro tunc filing. Boys’ Club was decided March 1, 1977, 5V2 months prior to the August 15,1977 filing deadline for an appeal to the county tax board for the tax year 1977, and 17V2 months prior to the 1978 deadline. It is thus inapplicable to the years 1977 and 1978 herein. The Authority was placed on notice of the change in the law on March 1, 1977, the date of decision in Boys’ Club. If it desired to preserve an appeal of the 1977 assessments on its property, it had until August 15,1977 to file a petition with the county tax board. A 1978 appeal could have been instituted up until August 15,1978. Subsequent to a reasonable time after March 1, 1977, there was no longer cause to rely on a statement of exemption filed pursuant to N.J.S.A. 54:4-4.4. There was more than an ample time span between the change in the law and the required filing deadlines for 1977 and 1978. The Authority, therefore, is not entitled to a nunc pro tunc filing based on the Boys’ Club rationale for either 1977 or 1978.
The Authority also points to Bergen Cty. v. Paramus, 79 N.J. 302, 399 A.2d 616 (1979). In that case plaintiff Bergen County filed a complaint in lieu of prerogative writs in the Superior Court seeking an adjudication that certain of its lands were exempt from real estate taxes assessed by defendant Borough of *378 Paramus. It was noted for the first time by the Supreme Court that plaintiff did not initiate its appeal before the county tax board as required by N.J.S.A. 54:3-21. Nonetheless, the court stated, “Though we envisage no reason why that was not done in this case, we shall address the substantive questions, since the matter is of public importance.” Id. at 306, 399 A.2d 616. An analysis of the merits revealed an inadequate factual record, and the court remanded the matter to the Division of Tax Appeals:
In view of all the circumstances and since public bodies and public funds are involved, we are of the opinion that the matter should be remanded to the Division of Tax Appeals for a plenary hearing concerning the County’s claim for a tax exemption for the lots in question for the year 1975. The County will be deemed to have filed nunc pro tunc an appeal for that year. See Boys' Club of Clifton, Inc. v. Tp. of Jefferson, supra, 72 N.J. at 405, 371 A.2d 22; cf. Patrolman’s Benev. Ass’n v. Town of Montclair, 70 N.J. 130, 136, 358 A.2d 180 (1976) (transferring dispute to PERC despite passage of six-month filing deadline). [79 N.J., at 310, 399 A.2d 616]
The above quotations are the only statements the court made regarding its decision on the jurisdictional question. No guidelines were given as to when assumption of jurisdictional is appropriate. The only factor influencing the court that can be gathered from the opinion is that public funds and public bodies were involved. However, I do not believe that the court intended that to be the sole criterion. If that were the case, then any appeal filed by a public body, no matter how far out of time, would have to be entertained by the court. Such a result would breed tardiness and disrespect for court rules and procedure. A better approach would be for the court to consider each case individually and assume jurisdiction only when the matter is of such public importance that all other considerations are outweighed. In the present matter the principal consideration advanced by the Authority, aside from the fact that it is a public body, is its reliance on cases since overruled. As noted above, such reliance was unjustified as to the tax years 1977 and 1978. Following March 1, 1977, the law was clear in requiring annual appeals of disputed tax assessments even though a statement of exemption was on file covering the tax years at issue.
In addition, it is noteworthy that in Bergen Cty. supra the taxpayer did institute legal proceedings within time, albeit to *379 the wrong tribunal. Proceedings were commenced in Superior Court rather than with the county tax board as provided in N.J.S.A. 54:3-21. The Supreme Court deemed the taxpayer to have timely filed with the county tax board and the Division of Tax Appeals knowing that a complaint had been filed in Superior Court within the time prescribed. Cf. Galligan v. Westfield Centre Service, Inc., 82 N.J. 188, 412 A.2d 122 (1980). In the instant case there was a complete failure to commence proceedings for the tax years of 1977 and 1978. This fact distinguishes the procedural history of this case from that in Bergen Cty. I am satisfied that Bergen Cty. does not warrant the assumption of jurisdiction in this matter for the years 1977 and 1978.
The Authority also asserts that its “vigorous” challenge of the 1975 assessments, the processing of similar appeals involving property in other taxing districts, and its belief that the 1975 appeal would be dispositive of the later years further support this court’s assumption of jurisdiction. None of these concerns serve to avoid the Authority’s responsibility to file appeals with the county tax board for 1977 and 1978. The Authority also maintains that its substantial land holdings make the cataloguing and filing of appeals difficult. If anything, this fact should spur the Authority to greater diligence with regard to its tax appeals. I find that this court lacks jurisdiction to consider the Authority’s claim for a tax exemption for the years 1977 and 1978.
The tax year 1976, however, presents a different situation. On August 15, 1976, the county tax board filing deadline for 1976, the Authority was justified in not appealing the 1976 assessment. As of that date it was entitled to rely on its 1974 exemption statement. Catholic Charities of Camden Diocese v. Pleasantville; Newark v. Essex Cty. Bd. of Tax., both supra. For 1976, therefore, this case falls squarely within Boys’ Club. Defendant’s arguments to the contrary are not persuasive. The court will proceed to decide the merits of the Authority’s claim for the years 1975 and 1976.
*380 II
The Authority’s claim for a tax exemption is grounded on N.J.S.A. 27:23-12, part of the New Jersey Turnpike Authority legislation, N.J.S.A. 27:23-1 et seq. The statute grants an exemption for qualifying Authority property. It provides:
The exercise of the powers granted by this act will be in all respects for the benefit of the people of the State, for the increase of their commerce and prosperity, and for the improvement of their health and living conditions, and as the operation and maintenance of turnpike projects by the Authority will constitute the performance of essential governmental functions, the Authority shall not be required to pay any taxes or assessments upon any turnpike project or any property acquired or used by the Authority under the provisions of this act or upon the income therefrom, and any turnpike project and any property acquired or used by the Authority under the provisions of this act and the income therefrom, and the bonds issued under the provisions of this act, their transfer and the income therefrom (including any profit made on the sale thereof) shall be exempt from taxation.
The starting point for an analysis of this statute is the decision of our Supreme Court in New Jersey Turnpike Auth. v. Washington Tp., 16 N.J. 38, 106 A.2d 4 (1954). In that case defendant townships assessed several tracts of land owned by the Authority located outside its 300-foot right of way along the Turnpike. Before their acquisition hy the Authority the parcels were used for farming. They were never put to any use by the Authority, nor was there any likelihood of their future use for Turnpike purposes. The Authority intended to dispose of them as soon as was practicable. The issue as framed by the court was “whether or not the Turnpike Authority has an unlimited right to tax exemption, including even such property as is not used as part of the turnpike project.” Id. at 42, 106 A.2d 4.
The court construed the phrase “property acquired or used by the Authority under the provisions of this act” in N.J.S.A. 27:23-12 (emphasis supplied) in the conjunctive in order to comply with the constitutional mandate that “Property shall be assessed for taxation under general laws and by uniform rules.” N.J.Const. Art. VIII, § I, par. 1. The court reasoned that a disjunctive construction would exempt from taxation property acquired by the Authority for reasons unrelated to its statutory purposes. Such a result would violate the constitutional provi *381 sion by conferring an exemption based on the personal status of the owner rather than on the use to which the property is put. The exemption provided by N.J.S.A. 27:23-12 should apply, said the court, only to
. . . property acquired for turnpike purposes and, having been so acquired, used for such purposes, or held with the present design to devote it within a reasonable length of time to such use.... [16 N.J. at 45, 106 A.2d 4]
This test was not satisfied in the case before the court, and the disputed assessments, which had been overturned by the Division of Tax Appeals, were reinstated.
The Supreme Court recently examined a different exemption statute dealing with property of a public body, and a construction similar to that adopted for Turnpike Authority property in New Jersey Turnpike Auth. v. Washington Tp., was formulated. In Bergen Cty. v. Paramus, supra, the court examined the statutory exemption from taxation for “property of the respective counties ... used for public purposes. ... ” N.J.S.A. 54:4-3.3. The court stated that the language, “used for public purposes,” “clearly contemplates that something more than ownership must be established. The word ‘used’ connotes employment or application to an end.” 79 N.J. at 306, 399 A.2d 616.
The trial court had found hat the county property at issue was entitled to an exemption because it was being held for “potential” public use. The Supreme Court rejected this finding. Under a test requiring only that at some indefinite point of time in the future the land might be used for a public purpose, almost all property would merit exemption from taxation. Such a result was not contemplated by the Legislature. On the other hand, the court concluded that actual use of the property was not required:
To interpret the word “use” to mean only actual use would be unrealistic, for a period of time will undoubtedly run between acquisition and placing the property in use. Some lead time will be involved due to readying the land and constructing whatever type of structures may be needed. Between these extremes is what we conceive to be the legislative intent — namely, a present intent to devote the property to a public use within a reasonable length of time....
A similar result was reached in N.J. Turnpike Auth. v. Tp. of Washington, 16 N.J. 38,106 A.2d 4 (1954), wherein this court construed an exemption under the *382 Turnpike Authority Act applicable to property “used” by the Authority to land actually used or “held with the present design to devote it within a reasonable length of time to such use.. .. ” [79 N.J. at 308, 399 A.2d 616]
Several eases have been decided in which the standard framed in New Jersey Turnpike Auth. v. Washington Tp., supra, or one similar to it, was applied to requests for real property tax exemptions. Most of them centered on the use to which the property was put, and whether such use was a public use so as to qualify for exemption. See, e. g., Moonachie v. Port of New York Auth., 38 N.J. 414, 185 A.2d 207 (1962); Bloomfield v. Tax Appeals Division, 84 N.J.Super. 19, 200 A.2d 793 (App.Div.1964); Palisades Interstate Park Comm’n v. Fort Lee, 69 N.J.Super. 269, 174 A.2d 256 (App.Div.1961). See, also, Newark v. Essex Cty. Bd. of Tax., 54 N.J. 171, 254 A.2d 513 (1969), cert. den., 396 U.S. 987, 90 S.Ct. 483, 24 L.Ed.2d 452 (1969). These cases do not offer any direct assistance in the resolution of this matter. Here it is clear that the two uses with which this property was concerned, the Toms River Expressway Project and a railway study, were “turnpike purposes.” N.J.S.A. 27:23-12. The Authority was directed by statute to undertake both endeavors. In addition, there is no dispute that the property was originally acquired for the expressway project. Therefore, the pivotal question is whether the property, at all times here relevant, was “used for such purposes, or held with the present design to devote it within a reasonable length of time to such use.” New Jersey Turnpike Auth. v. Washington Twp., supra, 16 N.J. at 45, 106 A.2d 4.
As stated above, the court has jurisdiction to decide the Authority’s appeal for the tax years 1975 and 1976 only. The date on which the eligibility of the property for exemption must be tested is October 1 of the pretax year, the date as of which the municipal assessor is directed to assess all real property in the taxing district. N.J.S.A. 54:4-23.[2] Therefore the court *383 must decide whether on October 1, 1974 for the tax year 1975, and October 1, 1975 for the tax year 1976, the subject property was being used for the expressway project or railway study, or held with the present intent to devote it to such use within a reasonable period of time.
In January 1974 the Byrne administration instructed the Authority to forestall commencement of the expressway project and await direction from the Governor’s office. On June 17, 1974 the Appellate Division rendered a decision invalidating the approvals for the project. Nevertheless, the stipulated facts reveal that on October 1, 1974 and October 1, 1975 the property was being held with the present intent to devote it to Turnpike purposes within a reasonable time. Until December 11,1974 the Authority was awaiting decision on a petition for certification filed with the Supreme Court in an attempt to challenge the decision of the Appellate Division. Although land acquisition ceased, condemnation actions already begun were continued to conclusion in 1975 and 1976. In addition, on June 28, 1974 the Legislature ordered the preparation of a study examining the feasibility of a railway operation in the expressway corridor. The Authority was at work on the study until July 1975. Further, through 1975 and into 1976 and beyond, the Authority was engaged in meetings with state officials, as a result of which the Authority was instructed to hold the project in abeyance pending further direction. The Authority’s intent during this period was to initiate and construct the project as soon as state approval and direction was forthcoming. It is clear that on October 1, 1974 and October 1, 1975 the expressway project and railway study were being pursued as actively as circumstances permitted and that the Authority had a present intent to devote the property to whichever of the stated purposes was ultimately adopted. Although the exact time such plans would become final was unknown on the October 1 dates, *384 and although the possibility existed that neither project would be adopted, under the circumstances it cannot be said that there was not an intent to devote the property to those purposes within a reasonable period of time.
In Port of New York Auth. v. Newark, 20 N.J. 386, 120 A.2d 18 (1956), the Supreme Court set aside tax assessments levied by the City of Newark on a truck terminal property owned by the Port Authority, known as Inland Terminal No. 3, for the years 1952 and 1953. During the years in question the Port Authority leased the terminal to the Air Force. The terminal had been idle since its completion in 1949 until the commencement of the Air Force lease in March 1951, due to the insertion of a clause in the Newark Local of the Teamsters Union contract prohibiting its carriers from transferring, without union permission, more than 5,000 pounds of freight daily to local cartage companies. The effect of the clause made operation of the terminal impossible. The court found that the Air Force’s use of the terminal was entirely consistent with the purposes to be served by the various projects of the Port of New York Authority and, applying the test of New Jersey Turnpike Auth. v. Washington Tp., supra, that such use was a public use justifying the property’s tax exempt status.
The court also determined that the property was being held by the Port Authority “with the present design to devote it within a reasonable length of time to such use,” reasoning as follows:
There is no evidence to show that the Port Authority has abandoned its original intent to use Inland Terminal No. 3 as a union motor truck terminal. That such is not the case clearly appears from the numerous statements which representatives of the Port Authority have made and the current effort which it is making to have the 5,000-pound limitation contained in Local 478’s contracts removed. Further evidence of the Port Authority’s intent may be gathered from the fact that under its lease with the Air Force specific provision was made for the maintenance and safeguarding of equipment presently in the building which will be needed for the future operation of a motor truck terminal.
The fact that operation of the terminal is or may be presently economically impossible by virtue of the union contract does not vitiate either the Port Authority’s intent or the tax exemption. It may well be that if it subsequently appears the Authority is not devoting the terminal to a public use and is not contemplating doing so, a court would be justified in holding that the future possible public use in mind is too speculative to warrant a continuation of tax *385 exemption, but we are not assaying an adjudication in futuro. [20 N.J. at 396-397, 120 A.2d 18]
Although the terminal property was in actual public use during the years in issue, the court indicated that even if the terminal were not being used, an exempt status would be called for provided the owner still contemplated a qualified use for the property. Such a result would be consistent with the standard set forth in New Jersey Turnpike Auth. v. Washington Tp. In the instant matter the undisputed facts show that the original intent to use the property for Turnpike purposes was present on each of the pertinent assessment dates. An intent to abandon the property is not evident until June 1979. The property was held a long time without actual use — from the denial of certification by the Supreme Court in South Brunswick Tp. v. New Jersey Turnpike Auth., supra, on December 11, 1974, until the decision to dispose of the properties in 1979. However, at least as of October 1, 1974 and October 1, 1975, it is clear that the Authority retained a bona fide present intent to devote the property to Turnpike purposes as soon as official guidance was provided.
Defendant’s argument for a contrary result does not rest on a different construction of the factual history of the case. Defendant submits that “the subject property fails to qualify for the statutory tax exemption unless it is in active highway use or is part of a viable Turnpike project.” This statement does not comport with the test for exemption established in New Jersey Turnpike Auth. v. Washington Tp.
I find, therefore, that plaintiff New Jersey Turnpike Authority is entitled to an exemption from taxation for the subject property for the years 1975 and 1976. For 1976 the Authority shall be deemed to have filed an appeal nunc pro tunc. Boys’ Club of Clifton, Inc. v. Jefferson Tp., supra. This court lacks jurisdiction to decide the Authority’s claim for an exemption for 1977 and 1978.
The Clerk of the Tax Court shall enter the appropriate judgments.

 The Authority acknowledges that the “Freeze Act,” N.J.S.A. 54:2-43 and N.J.S.A. 54:3-26, does not apply to a determination of tax exempt status. Newark v. Fischer, 8 N.J. 191, 84 A.2d 547 (1951); Blair Academy v. Blairstown Tp., 95 N.J.Super. 583, 232 A.2d 178 (App.Div.1967), certif. den. 50 N.J. 293, 234 A.2d 401 (1967).

This is not to say that if property qualifies for an exemption on October 1 of the pretax year it automatically retains the exemption for the entire year. If for any reason the property loses its entitlement to the exemption during *383 the year, it should be assessed and taxed pro rata for the number of months remaining. N.J.S.A. 54:4-63.28. However, we are here concerned only with the October 1 assessment dates.