EVERS, J. T. C.
The Borough of Paramus (borough) has taken this appeal from the 1976 judgment of the Bergen County Board of Taxation which granted an exemption from real estate taxation to lands owned by George Washington Memorial Park Cemetery Association (association) on the grounds that said lands are not dedicated to cemetery purposes and are unnecessary for the operation and maintenance of the lands so dedicated. In addition to urging that the county board judgment be affirmed, the association argues that this court’s decision should encompass years subsequent to 1976 despite the fact that it was only for 1976 that the association filed an appeal from the denial of its exemption claim.
I initially note that each annual assessment of property for tax purposes is a separate entity, distinct from the assessment of previous or subsequent years, thus giving rise to a separate cause of action for each year. Hackensack Water Co. v. Tax Appeals Div., 2 N.J. 157, 162, 65 A.2d 828 (1949) and Aetna Life Ins. Co. v. Newark, 10 N.J. 99, 103, 89 A.2d 385 (1952).
Pursuant to N.J.S.A. 54:4 — 4.4 the assessor must obtain an initial statement with respect to a claim for tax exemption and, every three years thereafter, must obtain a continuation or further statement. While it is unclear whether the statutory *577 provisions were complied with, it was nevertheless incumbent on the association to protect its position by filing an appeal.
The duty of the municipal assessor to obtain a statement from the owner concerning the exempt status of the property every three years, N.J.S.A. 54:4-4.4, does not excuse the owner from filing an appeal, even though a judgment of exemption had been entered for the prior year. [Boys Club of Clifton v. Jefferson Tp., 72 N.J. 389, 405, 371 A.2d 22 (1977)].
The issue was also raised in New Jersey Turnpike Auth. v. Monroe Tp., 2 N.J.Tax 371 (Tax Ct. 1981), where the Authority sought exempt status of its lands for 1975 through and including 1978, although only a 1975 appeal was filed. The Authority, as to 1976, 1977 and 1978, relied upon the triennial statements of exemption it filed pursuant to N.J.S.A. 54:4-A,4, which it interpreted to have a “freezing” effect on the exempt status of the property for the three years covered by the statement. The court noted that when the first statement was filed (1974) the Authority’s reliance upon it was justified because the existing case law held that the filing of an exemption statement did serve to freeze the exemption for three years. Catholic Charities of Diocese of Camden v. Pleasantville, 109 N.J.Super. 475, 263 A.2d 803 (App.Div. 1970), and Newark v. Essex Cty. Bd. of Tax’s, 110 N.J.Super. 93, 264 A.2d 461 (Law Div. 1970). The law changed, however, on March 1, 1977, when the Supreme Court decided Boys Club of Clifton v. Jefferson Tp., supra.
However, in recognition that Boys Club was decided well in advance of the filing of the complaint deadlines for 1977 and 1978, the court held that the Authority was put on notice that the authority in support of its position had been overruled. Accordingly the “freeze” argument with respect to 1977 and 1978 was rejected.
As applied to the instant matter, Boys Club was decided well in advance of the complaint filing deadlines for the years subsequent to 1976. Thus, the association was put on notice that the prior authority which existed in support of its position no longer obtained. Accordingly, I am compelled to find that the existence of the 1976 county board judgment or any purported reliance on the overruled cases does not excuse the association from making annual filings.
*578 Additionally, the association argues that the borough should be estopped from asserting that annual filing for exemption is a requirement, by virtue of borough’s failure to attempt to sell the property for nonpayment of taxes. Presumably such action would have triggered an attempt by the association to restrain the sale and then file annual appeals. This argument is also without merit, for the facts are clear that the association was well aware of borough’s position by virtue of the latter’s repeated denials of the exemption claims. The association’s property was never found to be exempt until the county tax board judgment in 1976. That judgment pertained only to the 1976 tax year. Accordingly the judgment of this court will apply only to the year under appeal.
The association is a nonprofit organization which operates a nondenominational cemetery on a 98-acre parcel. Approximately 80% of the saleable area within this 98-acre burial ground has already been sold. There have been approximately 53,000 burials which have consumed approximately 40% of the burial area already sold. Approximately 60% of the business of the cemetery is in immediate need, i. e., accommodating those who have not previously purchased cemetery lots. Burials average approximately 3,000 a year and, assuming the burial rate will remain constant, the remaining life of the cemetery area is approximately 25 years.
This 98-acre parcel is carried on borough’s tax exempt roles and is unquestionably dedicated for cemetery purposes within the meaning of N.J.S.A. 8A:6-7, which states:
Lands hereafter acquired and held under authority of this act or such parts thereof as may, from time to time, be required for cemetery purposes, shall be surveyed and divided into sections, lots or graves of such size as the managers, directors or trustees of the cemetery company from time to time may direct, with such avenues, paths, alleys and walks as they deem proper. A map or maps of all that land which shall be subdivided or has been subdivided as above shall be filed, and kept in the office of the cemetery company, open to the inspection of the interment space owners and a copy of such map or maps shall be filed in the office of the board, and such filings shall constitute a dedication of the lands for cemetery purposes.
Together with the actual cemetery parcel the association utilizes two tracts which are the subject of this appeal. Both *579 tracts adjoin the 98-acre parcel but are not adjacent to each other. Tract # 1 contains 16.45 acres and is used for the maintenance, as well as the storage of various materials used in the cemetery operation. The second tract contains 3.04 acres and contains a pond (approximately 1.5 acres) which serves as a drainage basin for the 98-acre parcel. The association contends that both tracts should be exempt from taxation pursuant to N.J.S.A. 8A:5-10, which provides:
Cemetery companies shall be exempt from the payment of any real estate taxes on lands dedicated for cemetery purposes, personal property taxes, business taxes, sales taxes, income taxes, and inheritance taxes. .. .
The cemetery property of whatsoever nature of any cemetery company, and lands dedicated prior to or in accordance with this act shall be exempt from all taxes, rates or assessments, and shall not be liable to be sold on execution, or to be applied in payment of debts due from any owner or holder of interment spaces, and their heirs, devisees or assigns shall hold the same exempt from taxation so long as the same shall remain dedicated to cemetery purposes. The aforesaid exemptions shall apply also to all land, structures, buildings, and equipment used for the operation and maintenance of said lands so dedicated.
The 16.45-acre tract is improved with a maintenance building containing 9,800 square feet, as well as with other smaller structures. A full-time maintenance staff of approximately 27 people is employed, although at any given time the number of employees may approximate 50. The association utilizes various items of equipment in conducting its operation, including front-end loaders, backhoes, tractors, trucks and utility trailers. A portion of this tract is also used for the storage of dirt removed from grave sites and other material used in the cemetery operation.
The grade of the 98-acre cemetery tract is such that it slopes generally in the direction of the 3.04-acre lot. A series of drainage pipes laid in' the network of roads throughout the burial area culminates in a 36-inch diameter pipe which empties into the pond on this lot. The water then flows through a 12-inch diameter pipe to the Saddle River. It was uncontested that this parcel is situated in the lowest portion of the entire association property and is thus well suited to serve as a drainage basin. It was established that the lot could never be used for burial purposes because of its wet soil condition. The *580 association’s president testified that, in addition to serving as a collection basin of the cemetery’s surface water, the pond also serves as a holding basin by virtue of the smaller 12-inch diameter outlet pipe, thereby affording protection to downstream owners from damage which could be caused by the otherwise heavier flow of water in the Saddle River.
As is the case with the vast majority of disputes concerning tax exemption, the critical issue here pertains to the controlling standard of use. In Washington Cemetery v. South Brunswick, 1 N.J.Tax 157 (1980), the Tax Court equated the standard in N.J.S.A. 8A:5-10 pertaining to the property used for the maintenance and preservation of the dedicated cemetery area, with the test of “actually used” in the nonprofit exemption statute, N.J.S.A. 54:4 — 3.6. The nature of the property therein was a caretaker’s residence, and the court found it exempt primarily on the basis that it was reasonably necessary for the efficient operation and maintenance of the land dedicated for cemetery purposes. That case is persuasive authority and I will accordingly follow its rationale.
I find that both parcels in question are reasonably necessary for the efficient operation and maintenance of the land dedicated for cemetery purposes. The smaller lot provides a very necessary drainage area for the burial grounds. Improper drainage could result not only in damage to the grave sites but could impair the aesthetic beauty of the cemetery grounds. The fact that the pond occupies approximately one-half of the area is of no moment, because a reasonable perimeter is necessary in order to set off this' tract from the burial area and an adjoining church property, and for purposes of road frontage.
The testimony of the association’s president painted a very persuasive picture of various uses on the larger tract. Located thereon is the relatively large maintenance building, garage buildings, various dumping areas for flowers, a storage area for grave markers, sand and top soil piles, miscellaneous storage areas, a parking area and an area used to lay out sod for purposes of covering burial sites. Each of the foregoing uses *581 suggests a very compelling demonstration of the tract’s use in terms of its reasonable necessity for the efficient operation of the dedicated land.
The borough attempted to establish that the association is not using the 16.45-acre tract efficiently. It offered testimony to that effect through the Superintendent of the Shade Tree and Parks Commission of the borough. The borough considered his supervision of the Tree and Park Commission to be sufficiently analogous to the duties and experience of a cemetery superintendent so as to qualify him as an expert to testify in connection with the efficient operation of the association’s business. I recognize that a business can always be viewed as being capable of being operated “more efficiently,” but that is quite irrelevant to the determination of whether lands qualify for a local property tax exemption.
In addition to its irrelevancy the testimony did not actually indicate that the cemetery’s operation and use of the two parcels in question was inefficient. The association’s president stated that certain recommendations by the borough’s expert had been employed in the past and that other recommendations were simply not practical or economically feasible. Moreover, even if this argument was supported by credible evidence, it carries the disturbing implication that a taxing district, in the context of a proceeding for a tax exemption, may dictate how a business should be run. Business efficiency can only be relevant to the issue of use, i. e., whether the property in question is reasonably necessary for the efficient operation of the dedicated burial area. Unless the area of the lands purportedly used for the maintenance and efficient operation of the cemetery proper is blatantly excessive, once it is established that such property is reasonably used a showing that the maintenance and operation of the cemetery may be performed more efficiently will not defeat the exemption. Accordingly, I find the subject property to be exempt within the meaning of the controlling provision of the Cemetery Act for the year 1976.
The Clerk of the Tax Court is directed to enter judgment adjudging the property to be exempt.