905 A.2d 900 (2006)
388 N.J. Super. 36
TOWNSHIP OF HOLMDEL, Plaintiff-Respondent,
v.
NEW JERSEY HIGHWAY AUTHORITY, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued March 15, 2006.
Decided September 5, 2006.
*901 Jeffrey J. Miller, Teaneck, argued the cause for appellant (DeCotiis, Fitzpatrick, Cole & Wisler, attorneys; Mr. Miller, on the brief).
Frederick W. Rose, Summit, argued the cause for respondent (Cooper, Rose & English, attorneys; Mr. Rose, on the brief).
Before Judges WEFING, FUENTES and GRAVES.
PER CURIAM.
Defendant the New Jersey Turnpike Authority (the Authority), as successor to the New Jersey Highway Authority, appeals from an order of the Tax Court entered on July 28, 2005. The order rejected a claim by the Authority that certain portions of its property and facilities now known as the PNC Bank Arts Center[1] (Arts Center) qualified for property tax exemption. We affirm.
This is the second time this matter is before us. In the first appeal, Township of Holmdel v. New Jersey Highway Authority, we noted that the issue was whether those portions of the Arts Center "subject to a twenty-one year `privitization' lease with GSAC Partners (GSAC) and to a biennial automatically renewable lease with 116 Park Caterers, have lost their prior immunity from local property taxes." 329 N.J.Super. 410, 412, 748 A.2d 128 (App.Div.2000). We found that the Tax Court's analysis of the scope of the authority's tax immunity was flawed because it failed to focus on whether the use of the Arts Center during the tax years at issue *902 "fulfill[ed] a purpose that the Authority has been created to perform." Id. at 425, 748 A.2d 128.
Because of several deficiencies in the record, we remanded the matter to the Tax Court. Id. at 431-32, 748 A.2d 128. On remand, the Tax Court was to conduct further proceedings and determine whether: (1) the use of the Arts Center under a lease agreement between the Authority and GSAC, dated January 10, 1997, effective May 1, 1996, actually represents the use the Legislature intended in 1968, when it "grandfathered" the Arts Center with an amendment to the Highway Authority Act, id. at 431, 748 A.2d 128, and (2) whether the Reception Center, constructed in 1989, was contemplated by the Legislature in 1968, when it amended the Highway Authority Act, and, if so, whether the actual use of the Reception Center during the years under appeal, was "too far removed from the initial contemplated use to warrant application of the tax immunity." Id. at 432, 748 A.2d 128.
On remand, the Tax Court issued a forty-five page published opinion, reported at 22 N.J.Tax 428 (2005). The Tax Court judge examined the Arts Center as it existed and operated in each of the tax years under appeal to determine whether there was either a continuation of existing facilities and activities or whether such facilities and activities were contemplated by the Legislature in connection with the 1968 legislation. After reviewing all the relevant circumstances, the Tax Court concluded that the entire Arts Center was not entitled to a tax exemption for the years 1997, 1998, 2000, 2001, 2002, or 2004. 22 N.J. Tax at 466. And for 1996, the Tax Court concluded that the Amphitheater facilities were entitled to a tax exemption, id. at 465, but the Reception Center was not. Id. at 466. The Tax Court's findings and conclusions included the following:
I conclude that the Amphitheater Facilities, as they existed as of October 1, 1996 and thereafter during the tax years under appeal, were operated in a manner foreign to the operation understood and contemplated by the Legislature in enacting the 1968 Legislation, and in a manner foreign to the purposes the authorities were created to perform. Accordingly, the Amphitheater Facilities ceased to qualify for tax exemption commencing in tax year 1997.
. . . .
Based on the Study Commission hearings as described above, I find and conclude that the Reception Center was not in the planning stages as of enactment of the 1968 Legislation. Consequently, it was not grandfathered by that Legislation. I also find and conclude that the operation of the Reception Center during all years under appeal was "foreign" to what the 1968 Legislation intended to grandfather. I reject the Authorities' argument that the use of the Reception Center constituted merely a continuation of activities conducted in the Celebrity House as of 1968. The primary use of the Reception Center under the Park Caterers and Merri Makers Agreements was a catering facility with a capacity of 350 persons at a sit-down dinner and 500 persons at a stand-up reception. The Celebrity House, with a capacity of 70 persons, was not used as a catering facility before or as of 1968, and was not used for receptions until 1972 or thereafter. In 1968, the Celebrity House was used, if at all, only as an adjunct to the Amphitheater without an independent revenue-generating purpose. Under the Park Caterers and Merri Makers Agreements, the primary purpose of the Reception Center was to generate revenue for the Authorities, a purpose that was partially accomplished, as discussed *903 above, by allowing the licensee to operate open bars at catered events. I concur with the statement contained in the legal opinion rendered by the Office of Legislative Services that "construction of the [Reception Center] appears to be exactly the type of project that the Legislature sought to control in enacting [the 1968 Legislation]." For all the foregoing reasons, the facility did not qualify for exemption for any of the years under appeal.
[Twp. of Holmdel v. N.J. Highway Auth., supra, 22 N.J. Tax at 455-56 (alterations in original).]
And the Tax Court specifically rejected the Authority's argument that the "Merger Legislation," L. 2003, c. 79, enacted in 2003 is dispositive:
I conclude that the absence of legislative action, between 1989 and enactment of the Merger Legislation in 2003, addressing the qualification of the Arts Center Complex for tax exemption should not be construed as reflecting a legislative intent contrary to the above analysis.
The Merger Legislation did no more than continue in effect the property tax exemption for the Arts Center Complex included in the grandfathering provisions of the 1968 Legislation. For the reasons set forth above, I have concluded that the Arts Center Complex failed to qualify for exemption under the 1968 Legislation (except for the Amphitheater Facilities in 1996), and the Merger Legislation does not require a change to that conclusion.
[22 N.J. Tax at 464.]
We are in substantial agreement with the Tax Court's stated rationale. Governmental tax immunities should be "liberally construed." Walter Reade, Inc. v. Twp. of Dennis, 36 N.J. 435, 440, 177 A.2d 752 (1962). It has also been recognized, however, that
"[t]he taxing power lies at the heart of government" and, therefore, application of any particular tax immunity must "stand scrutiny" to demonstrate that it serves the intended public purpose, that is to say, that the object or activity for which the immunity is sought is within the boundaries of the governmental entity's statutory powers and within the provisions of the specific statute granting the asserted immunity.
[Twp. of Holmdel v. N.J. Highway Auth., supra, 329 N.J.Super. at 419, 748 A.2d 128 (alteration in original) (quoting N.J. Tpk. Auth. v. Twp. of Washington, 16 N.J. 38, 44, 106 A.2d 4 (1954)).]
The Authority may enter into a lease with a private enterprise, and retain its governmental tax immunity "so long as the private enterprise uses or operates the subject property or governmental activity as it was intended to be used or operated under the governing statutory provisions and in a fashion the particular tax immunity was intended to benefit." Ibid. Additionally, the mere fact that the public entity or private enterprise makes a profit does not result in forfeiture of the tax exemption. Id. at 420, 748 A.2d 128. The Court has instructed that when a tax immunity is challenged, the reviewing court must "be satisfied that the Legislature intended to bestow a tax exemption of the dimensions and character claimed." Borough of Moonachie v. Port of N.Y. Auth., 38 N.J. 414, 424, 185 A.2d 207 (1962). The Court also stated:
The basic principle ... is that property owned by a public agency but employed primarily to obtain revenue or profit through private business uses is not immune from taxation, but property employed primarily for a public use does not lose immunity because the agency incidentally derives some private business *904 income from it. Stated more precisely for present purposes, a tax exemption based upon a statute specifying a particular public use is clearly lost when the use to which the property is put is foreign to the prescribed use and the revenue motive in adopting the use is the primary or exclusive one.

[Id. at 426-27, 185 A.2d 207 (third emphasis added) (citations omitted).]
Our review of the record, the briefs, and the arguments of counsel, in light of the prevailing legal standards, confirms that Judge Kuskin's findings are amply supported by sufficient credible evidence, and his conclusions predicated on those findings are legally sound. Accordingly, we affirm the order under appeal substantially for the reasons stated by Judge Kuskin in his comprehensive written decision.
Affirmed.
NOTES
[1] In July 1996, the Highway Authority sold the "naming rights" to the Garden State Arts Center to PNC Bank for a "sponsorship fee" of $8.5 million.